## POGGAS v. UNITED STATES.
### No. 47652.

United States Court of Claims.
March 6, 1951.

Keith L. Seegmiller and Ray R. Murdock, Washington, D. C., for plaintiff.

Kendall M. Barnes, Department of Justice, Washington, D. C., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The Government has filed a motion for a new trial in which it urges at length a point which it had raised before, but only briefly. That point is that Section 23 of the Act of March 28, 1934, 48 Stat. 522, 5 U.S.C.A. § 673c, upon which section plaintiff's claim and our judgment rest, requires that there be deducted from the overtime pay awarded the plaintiff a percentage reduction prescribed by then applicable statutes. Before the Appropriation Act of March 28, 1934, which contained Section 23, was enacted, the Economy Act of March 20, 1933, 48 Stat. 8, 12, was in effect, which provided in Title III, Sections 2, 3, for a general percentage reduction in Federal salaries and wages of whatever percentage, not to exceed 15%, the President should determine to be the reduction in the cost of living below that of a designated base period. Pursuant to a determination of the President, the maximum reduction of 15% was in effect, and, under the 1933 Act, was to be in effect until June 30, 1934. But the Act of March 28, 1934, in its Section 21 amended Section 3(b) of the Act of March 20, 1933, as follows: "Section 3(b) is amended by striking out '15 per centum' and inserting in lieu thereof the following: '10 per centum during the portion of the fiscal year 1934 beginning February 1, 1934, and ending June 30, 1934, and shall not exceed 5 per centum during the fiscal year ending June 30, 1935.' "

It would seem, then, that the statutory reduction in pay for employees of the Government, including the plaintiff, would have been 10% from March 28, 1934, the date of enactment of the above-quoted amendment, to June 30, 1934, and, from July 1, 1934, to June 30, 1935, 5%. Yet for some reason the plaintiff's pay was still reduced 15% after March 28, 1934, to December 31, 1934, and from January 1, 1935, was reduced 5% until March 31, 1935, as of which date the percentage reductions were eliminated by the Joint Resolution of February 13, 1935, 49 Stat. 24.

The Government urges us, in computing the plaintiff's overtime under Section 23, to discount it by 15% down to December 31, 1934, and by 5% thereafter to March 31, 1935. Oddly enough, the plaintiff concedes that if the statutory percentage reduction is applicable at all, it should be at the percentages urged by the Government. This consensus makes us dubious that we have read the statutes correctly, though they seem to be quite plain. But in view of what we are about to say, it is immaterial wheth-

er the proper reduction, if one were made, would be 15% or 10%.

We quote again Section 23 of the Act of March 28, 1934: "The weekly compensation, minus any general percentage reduction which may be prescribed by Act of Congress, for the several trades and occupations, which is set by wage boards or other wage-fixing authorities, shall be re-established and maintained at rates not lower than necessary to restore the full weekly earnings of such employees in accordance with the full-time weekly earnings under the respective wage schedules in effect on June 1, 1932: *Provided,* That the regular hours of labor shall not be more than forty per week; and all overtime shall be compensated for at the rate of not less than time and one half."

The Government says that any percentage reduction then current was to be applied to the wage board employees with which Section 23 was solely concerned. The plaintiff says, correctly, that if the section meant that, it meant nothing at all, except what it said in the proviso.

The text itself is not clear. But in the circumstances, the fact being that the only current reason why the wages of wage board employees was below their June 1, 1932, wages was the percentage reduction, we think that what Congress meant was that, percentage reduction or no percentage reduction, the net weekly earnings were to be not less than they were on the 1932 date.

The Comptroller General ruled to the contrary in a decision of April 6, 1934, 13 C.G. 265, 269. An analysis of the Comptroller General's decision shows that an employee who received $48 per week on June 1, 1932, and, after the 15% reduction, received $40.80 before Section 23 was enacted, would still receive $40.80 after Section 23 was enacted, and the 15% was still deducted. To be sure, he would have to work only 40 hours a week to earn his $40.80, but it could not be said that his full weekly earnings had been restored to $48. The requirement of a 40-hour week was put into a proviso, and was not, it seems to us, intended to modify the rule stated in the prior language of Section 23. In short the section meant to give wage board employees the same *weekly* pay which they had had on June 1, 1932, and further to give them time and one-half for any work in excess of 40 hours per week, if they were required to work in excess of 40 hours a week.

The Government again urges that the problems and complications involved in applying Section 23 to employees such as operating employees on a railroad, who are paid on a dual system of time or mileage, whichever produces the most pay, shows that Congress did not intend Section 23 to apply to the employees of the Alaska Railroad. The plaintiff, being a track foreman, was not paid on a dual system but on a time basis. If, therefore, he is not entitled to the benefits of Section 23, it is not because there is any particular problem about applying the section to him and the other nonoperating employees, but because, as the Government urges, all employees of the railroad are left outside the protection of the Act because as to some of them, if they were held to be within its protection, problems, and difficulties would arise as to its application. If some wage board employees are to be read out of the protection of the Act, although covered by its terms, because of latent difficulties in applying the Act, we think the line would more logically, and certainly more equitably, be drawn around those employees whose cases present the difficulty. That would mean that not all the employees of the railroad, but only those operating employees whose wages were paid on the dual system, would be left out.

The Government's motion for a new trial is denied.

JONES, Chief Judge, and HOWELL, WHITAKER and LITTLETON, Judges, concur.