Robert F. BOYD, on behalf of himself and all other Panama Canal pilots similarly situated (listing 75 additional plaintiffs), Plaintiffs,

v.

The PANAMA CANAL COMPANY, a Federally chartered corporation, Defendant.

Civ. No. 3960.

District Court, Canal Zone, Division Balboa.

Jan. 10, 1958.

William S. Tyson, Washington, D. C., Van Siclen, Ramirez & De Castro, Ancon, C. Z., for Captain Boyd and other pilots.

General Counsel of the Panama Canal Co., and Paul A. Bentz, Balboa Heights, C. Z., Chief Counsel, for Canal Co.

David J. Markun, Balboa Heights, C. Z., and Dwight A. McKabney, Ancon, C. Z., trial attorneys.

CROWE, District Judge.

This is an action brought on June 30, 1954, by Robert F. Boyd, a Panama Canal

pilot, on behalf of himself and as a representative of all other Panama Canal pilots similarly situated, including 75 other Panama Canal pilots whose names are listed in the caption of the complaint, against The Panama Canal Company, a Federally chartered corporation.

The plaintiff Boyd alleges that the defendant owes him and each Panama Canal pilot similarly situated wages from July 1, 1951, by reason of the defendant's failure to compensate them in accordance with applicable provisions of the law and that the amount due each pilot at the time of the filing of the action was approximately $28,250, subject to exact computation.

The plaintiff claims more specifically that since July 1, 1951, to the date of judgment he and the others are entitled to be paid:

(1) Basic pay for pilots or comparable position in the maritime industry;

(2) For all hours spent in "stand-by" or "on-call" time under the control and direction of defendant;

(3) At the rate of double time for all hours worked on recognized holidays;

(4) Overtime compensation for work performed after 5 p. m. and before 8 a. m.;

(5) Compensation for hours spent in travel time after the 40th hour of work in a workweek or on a non-work day;

(6) Overtime compensation for hours worked in excess of eight per day;

(7) Overtime compensation for Saturday and Sunday work;

(8) Subsistence and room allowance or an amount of $6 per day in lieu thereof;

(9) Premium compensation of 10 per cent of the basic pay for piloting vessels carrying explosives and extra compensation of $10 per voyage for working on vessels carrying cargoes of sulphur;

(10) Additional pay of $10 per ship for shifting ships; and

(11) True time and one-half overtime compensation for hours they have worked in excess of forty during workweeks between July 1, 1951 and January 18, 1953.

The plaintiff asserts that the overtime due him and the other pilots for the period from July 1, 1951 and January 18, 1953, is by reason of the provisions of Section 203 of the Federal Employees Pay Act of 1945, and the other compensation claimed is because the defendant has not paid them in accordance with the pay rates and practices in the maritime industry as is required by Section 202(8) of the Classification Act of 1949.

The statutes relied upon are as follows:

1. Sections 102(c) and 203 (now 205) of the Federal Employees Pay Act of 1945, 59 Stat. 296, 297, 5 U.S.C. §§ 902, 913 [5 U.S.C.A. §§ 902, 913]:

"Sec. 102(c). This Act, except Sections 203 and 607, shall not apply to employees whose basic compensation is fixed and adjusted from time to time in accordance with prevailing rates by wage boards or similar administrative authority serving the same purpose."

"Sec. 203. Employees whose basic rate of compensation is fixed on an annual or monthly basis and adjusted from time to time in accordance with prevailing rates by wage boards or similar administrative authority serving the same purpose shall be entitled to overtime pay in accordance with the provisions of Section 23 of the Act of March 28, 1934 (U.S.C. 1940 edition, Title 5, Sec. 673c). The rate of compensation for each hour of overtime employment of any such employee shall be computed as follows:

"(a) If the basic rate of compensation of the employee is fixed on an annual basis, divide such basic rate of compensation by two thousand and eighty and multiply the quotient by one and one-half; and

"(b) If the basic rate of compensation of the employee is fixed on a monthly basis, multiply such basic rate of compensation by twelve to derive a basic annual rate of com-

pensation, divide such basic annual rate of compensation by two thousand and eighty, and multiply the quotient by one and one-half."

2. Section 202(8) of the Classification Act of 1949, 63 Stat. 954, 5 U.S.C. § 1082 [5 U.S.C.A. § 1082]:

"Sec. 202. This Chapter (except Title XII) shall not apply to * *

"(8) Officers and members of crews of vessels, whose compensation shall be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates and practices in the maritime industry."

3. Section 203 of the Classification Act of 1949, 63 Stat. 956, 5 U.S.C. § 1083 [5 U.S.C.A. § 1083]:

"The Civil Service Commission, hereinafter referred to as the 'Commission', is authorized and directed to determine finally the applicability of sections 201 and 202 to specific positions, officers, and employees."

4. Section 23 of the Act of March 28, 1934, 48 Stat. 522, 5 U.S.C. § 673c [5 U.S.C.A. § 673c]:

"The weekly compensation, minus any general percentage reduction which may be prescribed by Act of Congress, for the several trades and occupations, which is set by wage boards or other wage-fixing authorities, shall be re-established and maintained at rates not lower than necessary to restore the full weekly earnings of such employees in accordance with the full-time weekly earnings under the respective wage schedules in effect on June 1, 1932: Provided, That the regular hours of labor shall not be more than forty per week; and all overtime shall be compensated for at the rate of not less than time and one-half.' "

The defendant attacks the action on the basis that it is not a representative suit under the Canal Zone Code and denies liability on the following grounds:

(1) The statutes under which claim is made are not applicable to plaintiff;

(2) That, assuming arguendo, that Section 202(8) of the Classification Act of 1949 is applicable, the agency action taken under the section is not subject to judicial review; and

(3) That, assuming arguendo, that Section 202(8) is applicable and that judicial review of the defendant's administrative determination thereunder is available, the administrative action taken by the defendant in establishing rates and practices for its pilots may not be set aside by the Court since it is fully supported by substantial evidence on the record.

The defendant claims further that should the Court decide that either or both the statutes relied upon by plaintiff are applicable and that judicial review is available, it is entitled to the right of recoupment and set-off against any recovery to the extent that it has paid plaintiff in excess of applicable maritime rates and practices.

The defendant also pleads the statute of limitation and claims laches as a bar to certain elements of the compensation claimed.

1. The first question to be determined is whether or not this is a representative action under the Canal Zone Code and the Court is convinced that it is. This was raised originally on demurrer to the complaint and although overruled it was permitted to be raised again in final argument because of the questions of fact involved.

Title 4, Section 122, of the Canal Zone Code provides that:

"Every action must be prosecuted in the name of the real party in interest."

and further in Section 138 it states:

"Of the parties to the action, those who are united in interest must be joined as plaintiffs or defendants; but if the consent of any who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint; and when the question is one of a common or

general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

There may be some question about the sufficiency of plaintiff's complaint and possibly his allegations should have been more definitive of the similarity of plaintiff Boyd's position and that of the other pilots embraced but such a weakness in the original pleading has been definitely cured by the subsequent pleadings and proof.

There is no doubt, and this is admitted in defendant's brief, that there exist common questions of law for the decision by the Court as to the meaning of the statutes presented and the interpretation of their effect will serve all the Panama Canal pilots equally.

Defendant's further argument is to the effect that the questions of fact are not common to the class because of the different periods of employment by each pilot, that non-workdays have not been the same, their travel time has varied as individuals, their work assignments have varied, and their illness and vacation times vary as to date and duration, all of which is unquestionably true.

In deciding the case of Fanucchi v. Coberly-West Company, 1957, 151 Cal. App.2d 72, 311 P.2d 33, 40, and holding it was a class action the Supreme Court of California when confronted with the argument of counsel for the defense that as the alleged misconduct of defendants was the product of "innumerable transactions" and as the possible defenses are so numerous that a trial as a class action would be "intolerable," said:

"This is not a tort action involving separate torts as to different persons, and it is not a case where the right of each member of a class to recover is dependent upon facts which are applicable only to him. All basic facts necessary to establish liability are the same, each grower would have to show what happened to all other growers in order to recover for himself, and the amount that may be due to each member of the class can be determined as easily as in any case involving numerous interests in a common trust fund."

The defendant is not prejudiced by the procedure for it was the employer of all pilots claiming for the period involved and has full knowledge of all of the facts pertaining to hours worked and related subjects in question and it has known from the inception of the suit that the method chosen was chosen in the belief that all of the pilots' rights would be tested in the one action. Further, each pilot must prove himself to be a member of the class and establish to the satisfaction of the Court the amount due him with full opportunity on the part of the defendant to rebut the proof as to his position and the amount claimed.

A holding that this is not a class action, as contemplated by the Canal Zone Code, would operate seriously, however, to the prejudice of the pilots for the statute of limitations would preclude recovery of large parts of their claims if they are now forced to begin anew.

The Supreme Court of California in Bank of California, Nat. Ass'n v. Superior Court, etc., 16 Cal.2d 516, 106 P.2d 879, 883, said in determining the question of indispensable parties:

"Bearing in mind the fundamental purpose of the doctrine, we should, in dealing with 'necessary' and 'indispensable' parties, be careful to avoid converting a discretionary power or a rule of fairness in procedure into an arbitrary and burdensome requirement which may thwart rather than accomplish justice."

The questions presented in that case are somewhat different than the case at bar but the principle enunciated is sound and is applicable to this case.

The proof herein establishes that the consent of the parties interested was secured by vote of the Pilots Association so the danger of abuse by one plaintiff electing to sue for all without the consent of the parties interested is not present.

As argued by the defendant this suit falls into the category known as "spurious class actions" because of the common questions of law and the varying questions of fact. It cites the case of Weaver v. Pasadena Tournament of Roses Ass'n, 32 Cal.2d 833, 198 P.2d 514, a California case as a ruling case in support of its theory that the case at bar is not embraced by the Canal Zone Code and argues forcibly that as the Canal Zone Code provision involved herein was adopted verbatim from Section 382 of the Code of Civil Procedure of the State of California that this court must utilize the rule propounded by the Supreme Court in Capital Traction Co. v. Hof, 1899, 174 U.S. 1, 36, 19 S.Ct. 580, 594, 43 L.Ed. 873, which held that when Congress, in legislating for the District of Columbia, borrows statutes from a state, known and settled constructions must be carried with it.

While the Weaver case and some other California cases cited that were decided prior to the adoption of the Canal Zone Code seem to support defendant's position, it is not believed by this Court that it is irretrievably bound by California decisions for as was decided by the United States Court of Appeals in Panama Canal Company v. Wagner, 5 Cir., 1956, 234 F.2d 163, 168, in determining that the affirmative defense of assumption of risk, available in California, was not available in the Canal Zone the court said that the common law may be resorted to for aid in determining the provisions of the Code but that the Canal Zone Code differs, however, "in significant respect from the California Code after which it was patterned." It said further that in establishing the California Code no language was used similar to the Act of Congress of June 19, 1934, H.R. 8700, Public No. 431, Chapter 667, "To establish a Code of Laws for the Canal Zone and for other purposes," providing:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the seven titled hereinafter set forth shall constitute the Code of Laws for the Canal Zone and shall, for all purposes, establish conclusively, and be deemed to embrace, all the permanent laws relating to or applying in the Canal Zone in force on the date of enactment of this Act, except such general laws of the United States as relate to or apply in the Canal Zone."

The court then said:

"Such a positive and unambiguous enactment leaves no room to doubt that the Congress established a true Code of Laws for the Canal Zone, and not simply a compilation subject to being supplemented by the common law."

Thus, although the decisions of the courts of California are highly esteemed and used widely by us as guides, we are not bound to invoke a rule laid down by them that would create a manifest injustice in a case in our jurisdiction.

Delving into the matter further the Court finds that in the Federal Rule of Civil Procedure, rule 23(a), 28 U.S.C.A. it is provided that representative action may be maintained when "there is a common *question of law or fact* affecting the several rights and a common relief is sought." (Emphasis supplied.) This Court of course does not operate under the Federal Rules of Civil Procedure but it recognizes the great similarity in the language of Rule 23 and the Canal Zone Code and also takes cognizance of the fact that the Canal Zone Code does not attempt to differentiate between the kinds of questions presented but contents itself in using even broader language in saying "when *the question* is one of common or general interest." (Emphasis supplied.)

In interpreting Rule 23 the U. S. District Court of California in Hess v. Anderson, Clayton & Co., 20 F.R.D. 466, 479, an action by cotton growers on behalf of themselves and others against buyers, processors and ginners for damages for violation of anti-trust laws, decided that the test was that the court must be satis-

fied that the persons before it will fairly insure adequate representation of all, saying:

"I am of the view that *in any one of the three forms* of actions allowed, (1) the 'true' form of class action, (2) the 'hybrid'' form or (3) the 'spurious' class action, the court must be satisfied that the persons before it will *fairly insure adequate representation of all.*" (Emphasis supplied.)

Here the proof establishes that by unanimous vote of the Pilots Association the suit was instituted for all in the Association. If this were a jury case it might be impracticable to try it as a class action because of the inconvenience of calling the jury back from time to time over an extensive period to determine the individual amounts due each pilot, but as it is not a jury case it appears perfectly practicable that within a period fixed by the Court each member of the class may come in and set up his claim.

In considering the further phase of the statute relative to the impracticability of bringing all of the parties before court, it is the Court's opinion that plaintiff's position is somewhat weak but not completely without merit.

There is a large number and though nearly all are here there are a few who have retired since 1951 and are no longer in this jurisdiction.

These two facts standing alone might not be sufficient for the conclusion that this is a representative action without some further proof that it is "impracticable" to bring them before court but when coupled with the common question present it seems to this Court to eliminate all doubt.

2. The next question is the aplicability of Section 202(8) of the Classification Act of 1949, 5 U.S.C.A. § 1082(8).

This question was raised originally by demurrer to plaintiff's complaint and the Court held at that time that there was no "ambiguity" between Sections 202(8) and 202(20) as the effect of both was to exclude the pilots from the provisions of the Act and that the affirmative part of Section 202(8) expressing the pay policy of "officers and members of crews of vessels" related to the pilots and governed the method of fixing their compensation.

Upon reflection the Court believes that it erred in its conclusions and that the section is not applicable.

At the time of that decision the Court was of the belief that an extensive legislative history supported the theory that the pilots were entitled to the affirmative provision of the section because otherwise they would be divested of long held prerogatives, but a review of that history convinces it that for a short time only, being the period between the adoption of the Classification Act of 1949 and July 1, 1951, when the 76 pilots along with approximately 10,000 other employees of The Panama Canal were transferred to the defendant Panama Canal Company pursuant to the Act of September 26, 1950, 64 Stat. 1041, could they be construed to have been embraced by it, and thus be said to be the recipients of the benefits of such a statutory plan of compensation.

During that period, as was established by plaintiff, the Civil Service Commission in a ruling to The Panama Canal on August 11, 1950, ruled that Panama Canal pilots were officers and members of the crews of vessels within the meaning of Section 202(8) of the 1949 Classification Act and should be compensated as provided in that section. This ruling was concurred in by the Comptroller General on October 16, 1950, 30 Comp.Gen. 158.

In a ruling of August 6, 1951, the Civil Service Commission in a letter to The Panama Canal Company held, however, that Section 202(20) alone excluded the pilots and other employees but later in a letter of September 22, 1952, to Francis P. Noonan, as representative of certain Panama Canal pilots, it ruled that Section 202(8) was still applicable as well as Section 202(20) and that the affirmative provision relative to their method of compensation also applied.

The Comptroller General on September 12, 1951, 31 Comp.Gen. 87, supported the decision of the Civil Service Commission's ruling of August 6, 1951, that 202 (20) only was applicable and then when the Civil Service Commission changed its view the Comptroller General also changed and issued an opinion supporting the Commission's letter of September 22, 1952, in a ruling of January 2, 1953, 32 Comp.Gen. 307.

█ The opinions of the two agencies, the Civil Service Commission and the Comptroller General, are given great weight by this Court but I submit that they do not have the binding effect of court decisions. See: Crowell v. Benson, 1932, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598; Ng Fung Ho v. White, 1922, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938.

The indecision displayed by the agencies tends to lower the value of their opinions in this case and leads the Court further to believe that it is an error to rule that the pilots are included in any manner in the Classification Act of 1949. If the Court were to rule that the affirmative part of 202(8) is applicable, the effect of its holding would be that the Act does apply to them in spite of the fact that they are employees of The Panama Canal Company when the company is specifically excluded as follows:

"Sec. 202 [5 U.S.C. § 1082] This Act (except Title XII) shall not apply to—

*     *     *     *     *     *

"(20) the Panama Canal Company."

The Panama Canal of which the pilots were a part was not subject to the Classification Act of 1923, further establishing historically that the pilots were not classified and therefore not intended to be embraced by an act of classification.

Plaintiff argues that by the provisions of Sec. 203 of the Classification Act of 1949, 63 Stat. 956, 5 U.S.C.A. § 1083, as follows:

"The Civil Service Commission, hereinafter referred to as the 'Commission', is authorized and directed to determine finally the applicability of sections 201 and 202 to specific positions, officers, and employees." that the Civil Service Commission has "final authority" to determine such questions as are here presented.

█ Obviously this provision addresses itself to any question that might be raised within an organization of the Government that is embraced by the Act. It cannot be said to be so broad as to permit the Commission to reach out and include certain employees that may be construed to fit a definition in one paragraph when they are members of an organization that by Congress has been specifically excluded.

This is a question of law, not of fact, and to hold that the Commission's determination was final and binding on this Court would be in violation of the rule enunciated by the Supreme Court holding that questions of law are reserved to the courts for determination upon review of administrative determinations. See Federal Communications Commission v. Pottsville Broadcasting Co., 1940, 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656; Crowell v. Benson, 1932, 285 U.S. 22, 52 S.Ct. 285, 297, 76 L.Ed. 598.

As soundly argued by defendant, were this to be considered a question of fact or a mixed question of law and fact it would be what the court in Crowell v. Benson, supra, called a "fundamental or jurisdictional fact," for unless the pilots are entitled to claim under Section 202 (8) as their suit is based on a United States statute this Court does not have jurisdiction of the action.

In applying, therefore, the rule of law laid down by the courts it appears that the ruling that specific provisions control over general provisions must be applied.

"However inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment. *   *" Clifford F. MacEvoy Co. v. United States, 1944, 322 U.S. 102, 64 S.Ct. 890, 894, 88 L.Ed. 1163.

"It is a well-settled principal of construction that specific terms covering the given subject-matter will prevail over the general language of the same or another statute which might otherwise prove controlling." Baltimore Nat. Bank v. State Tax Commission of Maryland, 1936, 297 U.S. 209, 56 S.Ct. 417, 420, 80 L.Ed. 586.

\* \* \* \* \* \*

"General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment." D. Ginsberg & Sons, Inc., v. Popkin, 1932, 285 U.S. 204, 52 S.Ct. 322, 323, 76 L.Ed. 704.

In this case the phrase "officers and members of crews of vessels" as expressed in Section 202(8) is a general provision and although it may be broad enough to include the pilots it should not be held to apply as Section 202(20) specifically deals with them as employees of "The Panama Canal Company."

There is considerable question as to whether it can be said that pilots are "officers and members of crews of vessels" because they have no permanent connection with the vessel and receive no wages from her, they have not signed articles, etc. See: Maryland Casualty Company v. Lawson, 5 Cir., 94 F.2d 190; A. L. Mechling Barge Line v. Bassett, 7 Cir., 119 F.2d 995; Moore Dry Dock Co. v. Pillsbury, 9 Cir., 100 F.2d 245; William Spencer & Son Corp. v. Lowe, 2 Cir., 152 F.2d 847; Norris, The Law of Seamen, Sec. 11, p. 15.

This viewpoint is not persuasive, however, for if the employees of The Panama Canal Company were not excluded a decision of the Civil Service Commission that the pilots do fit into the category of officers and members of crews of vessels would be absolute under the Commission's power to "determine finally the applicability of sections 201 and 202 to specific positions, officers, and employees" under Section 203 of the 1949 Act, supra.

The action of Congress in establishing the "General Powers of Corporation" of The Panama Canal Company enacted June 19, 1934, 48 Stat. 1112, as added June 29, 1948, 62 Stat. 1078, and amended September 26, 1950, 64 Stat. 1041; and being Title 2, Section 248(e), of the Canal Zone Code, points further to the intent of Congress that the method of fixing the compensation of Panama Canal Company employees not be embraced in the Classification Act of 1949 in giving the company the authority to:

" \* \* \* appoint such officers, agents, attorneys, and employees as may be necessary for the conduct of the business of the corporation, define their authority and duties, *fix their compensation* \* \* \*" (Emphasis supplied.)

It is believed that the purpose of transferring the Canal to the corporation was to put it under such management and accounting practices that it could be made to pay its own way, and as stated in Abbott v. United States, 1953, 112 F.Supp. 801, 804, 125 Ct.Cl. 330, a case involving many of the pilots herein and the Panama Canal, in speaking of the transfer the court said, "Congress seems to have wanted to cut it loose from the United States as far as possible."

3. The defendant has also interposed two other defenses:

a. That judicial review is not available to the plaintiff as it is barred by Sections 4 and 10 of the Administrative Procedure Act, 60 Stat. 237, as amended, 5 U.S.C.A. §§ 1001–1011, and,

b. That although it is not required by statute to do so it meets the test imposed by Section 202(8) in that there is a substantial compliance on the part of the defendant with the pay practices and earnings enjoyed by the state pilots as nearly as is consistent with the public interest and that these state pilots of the United States are the only comparable occupational group in the maritime industry.

These defenses need not now be considered as the decision that Section 202

(8) is not applicable causes them to become moot.

■ 4. It is the opinion of this Court that Section 205 (formerly Section 203, 5 U.S.C.A. § 913) of the Federal Employees Pay Act of 1945, 59 Stat. 295, as amended, 5 U.S.C.A. § 901 et seq., is applicable to plaintiffs and that they are entitled to the benefits of its provision relative to overtime compensation.

The section embraces them (a) if their basic rate of compensation is fixed on an "annual basis," (b) if that compensation has been "adjusted from time to time in accordance with prevailing rates by wage boards or similar administrative authority serving the same purpose," and (c) if they are not excluded by Section 102(d) of the said 1945 Act, 5 U.S.C.A. § 902, which excludes "vessel employees of the Panama Canal Company."

a. It is agreed and was stipulated by the parties that the pilots are paid on an annual basis so the only points for decision are the last two.

b. The history of the pilots' pay thoroughly establishes that it was adjusted from time to time in accordance with prevailing rates by wage boards or similar administrative authority serving the same purpose.

Pilots began piloting ships through the Panama Canal in 1914 and the first rates were established on the recommendations made by Captain Rodman, first Marine Superintendent, after considering the annual rates of pay for Government pilots at Honolulu, Navy Yards of New York, Norfolk, Mare Island, and Great Lakes.

In 1916 data was secured by the Bureau of Statistics on pilots' pay in the states relative to a request for an increase, which was denied, and in 1917 the rates were increased after a request by the pilots for consideration by the wage board but the proof does not show whether such consideration was given or not.

On July 1, 1919, a salary of $375 per month was fixed after a recommendation by the Board on Rates of Pay which used the salary of the Cape Code Canal pilots as a base.

The Governor of the Panama Canal approved the recommendation of the Salary Board that the pilots' pay be raised from $400 to $416.67 per month based on the change which had occurred in the compensation of other Canal employees and it became effective July 1, 1928.

The pilots' application for an increase was considered by the Salary Board of the Panama Canal on February 12, 1929, at which meeting their pay was compared with that of pilots in U. S. ports.

On September 27, 1941, the Chief of the Research & Service Bureau of The Panama Canal prepared a memorandum to the Director of Personnel comparing Panama Canal Pilots' rates of pay with those of masters of ocean-going vessels, masters of Army Transports, and Panama Railroad vessels, and pilots in U. S. ports and of Federal Barge Lines.

On October 1, 1941, the Governor appointed a "Special Committee" consisting of the Marine Superintendent, the Executive Secretary to the Governor and the Executive Assistant to consider the compensation of the pilots and to make recommendations to him. After meeting with representatives of the pilots and studying rates of pay of pilots in U. S. ports, of the Navy Yard, employed on Federal Barge Lines and masters of ocean-going vessels the committee recommended pay schedules and, among other things, that the compensation of the pilots be kept at a level not inconsistent with rates prevailing elsewhere for reasonably similar service.

On June 21, 1945, the Governor appointed a committee to review the Federal Employees Pay Act of 1945 and its effect on pay rates of Canal employees. The committee recommended that the pilots be paid the same overtime authorized by the 1945 Pay Act for classified employees and that the pilots receive an increase in basic pay. The Governor approved the recommendations of the committee, effective July 1, 1945.

The Governor appointed a Special Board on November 26, 1948, to consider pilots' pay rates and after considering the

pay rates of various members of the maritime industry a pay schedule for the pilots was recommended by the Governor on June 26, 1949.

On May 27, 1951, the Governor adopted a new scale of compensation for the pilots based on wages paid to masters of ocean-going vessels taken from wage agreements reflecting the wages paid in the Military Sea Transportation Service of the Department of the Navy, and on April 22, 1952, the President of defendant company appointed a "Board of Review of Pilots Rates of Pay and Working Conditions," which held hearings as to prevailing rates in the maritime industry and subsequently each member of the Board made recommendations of pay rates for the pilots to the President of defendant.

Thereafter by letter of September 29, 1952, the President of defendant company wrote the President of the Pilots Local No. 30 advising that a wage formula had been approved and that the pilots' pay would continue to be based upon "masters' rates" of the Military Sea Transportation Service of the Department of the Navy.

The director of personnel of the defendant company in a letter to the President of Local No. 30 advised of the abolishment of the then method of computing overtime, night differential, holiday extra compensation and the total pay ceiling restriction and adopting new procedures as a result of the "study and an exhaustive review of maritime industry rates of pay and practices."

On July 22, 1953, the plaintiffs' pay rates were adjusted retroactively to October 12, 1952, by the defendant in a "sincere attempt to carry out its obligation with respect to the payment of maritime industry wages" as stated in the letter of Edward A. Doolan, Personnel Director, dated July 22, 1953, and written to Captain H. T. Longmore, President Local No. 30, Canal Zone Pilots. On April 19, 1954, a similar adjustment was made retroactive to August 2, 1953, using the Military Sea Transportation Service as a comparison.

Again on June 30, 1955, an adjustment was approved retroactive to March 13, 1955, using the Military Sea Transportation Service rates as a comparison.

The defendant argues that this history of adjustments is of no value because they were not made "in accordance with prevailing rates" for to fit that description the rates of compensation paid to "state pilots" must be used as the position of state pilot is the only "directly comparable" position in private industry but in this the Court does not agree.

The state pilots perform duties that are quite similar to those of plaintiffs but masters and mates of vessels also perform many similar duties and defendant through its governors, presidents and personnel executives has recognized this similarity and used it in arriving at wage scales.

Some state pilots are quite dissimilar in their method of compensation for the Puget Sound Pilots, according to the testimony of Captain Kelly, are merely regulated by the state and their income is dependent on their proportionate division from a common pool formed from the fees for pilotage paid by the ships. This very uncertainty of income as was testified to by defendant made them difficult to use as accurate patterns for wage fixing in the Canal Zone.

Their methods of assignment to ships, their qualifications, their working hours are all different than those of the Canal Zone Pilots so the Court cannot agree that they occupy the only directly comparable positions in private industry. They are comparable in many ways but so are masters and mates.

The Governor of The Panama Canal had the authority to fix the pay of the pilots until the pilots became employees of the defendant, Panama Canal Company, when that power became one of the prerogatives of the defendant after the effective date of the transfer of plaintiffs, along with some 10,000 other employees on July 1, 1951.

As held by the Court of Claims in Abbott v. United States, 112 F.Supp.

801, 125 Ct.Cl. 330, a case involving the same sections of the statutes and the plaintiffs when they were employees of the Panama Canal, the Governor was a "wage fixing authority" within the meaning of the act. The same is true of the Panama Canal Company after July 1, 1951, for it assumed the functions formerly exercised by the Governor and as recited above adjusted the pilots' pay from time to time.

In Poggas v. United States, 96 F.Supp. 609, 118 Ct.Cl. 385, a similar ruling was made in holding that the Secretary of the Interior was acting as a wage fixing authority in setting the wages of employees of the Alaska Railroad.

c. It is not believed by the Court that the pilots fit within the category of "vessel employees of the Panama Canal Company" for when the act was passed it contained the words "Panama Railroad Company" in lieu of Panama Canal Company and the pilots were employees of a separate organization which was designated at that time as The Panama Canal.

The Panama Railroad Company owned ships, tugs, work boats, launches, dredges, etc., on which there were numerous employees who were intended by Congress to be excluded from the provisions of the act but certainly the pilots were not contemplated as being among that group for they were not even Panama Railroad Company employees.

The Court is further of the opinion that later when the Federal Pay Act of 1945 was amended to include the defendant in place of the Panama Railroad Company and the plaintiffs, along with many other employees, properties, records, etc., were transferred to the defendant, effective July 1, 1951, through authorization of Congress by act of September 26, 1950, 64 Stat. 1042, Section 256, Title 2, of the Canal Zone Code, their status was unchanged although in a manner of speaking they are "vessel employees" because their work is on vessels, however their work is not on vessels of the company.

That the defendant was of the opinion at the time of the transfer that the pilots' status was unchanged and that they were not excluded from the provision of the 1945 Pay Act is plainly evidenced by a radiogram dated June 26, 1951, from Governor Newcomer requesting a ruling from the Comptroller General of the U. S. on the status of the pilots after the effective date of the transfer, which states in part:

"This office considers that pilots will not be vessel employees of Panama Canal Company within meaning of Section 102(d) of 1945 Pay Act, and that pilots are therefore not excluded from that Act."

Later on August 13, 1951, defendant by letter of its employee, B. F. Burdick, Chief of Office, wrote to the Comptroller General again communicating to him the facts of the transfer and requesting a ruling as to the pilots' status, to which he replied in a letter dated September 12, 1951, which stated in part as follows:

"I am of the opinion that the term 'vessel employees of the Panama Railroad Company,' as used in section 102(d) of the 1945 Pay Act has no different scope now from what it had at the time of the enactment; that is to say, such term originally included only employees employed on vessels operated by the Panama Railroad Company and the fact that Panama Canal pilots now are employees of the Panama Canal Company, the successor corporation, together with the fact that the pilots might broadly be viewed as 'vessel employees' does not serve to bring such employees within the exemption provisions of section 102(d)."

5. This Court is of the opinion that the decision of the Court of Claims in Abbott v. United States, supra, is sound in its determination as to the pilots' entitlement to the so-called "stand by" time and travel time after forty hours a week on a non-work day.

As to the stand by time the plaintiffs advance the argument that as they are required to be available at designated hours for piloting service and as they are called several hours in advance of the

designated hour and told that they will be picked up at a certain hour, that they should be paid for the hours between notification and pickup.

The Court of Claims in considering this said, of the pilot:

"In the meantime he may do as he pleases, where he pleases, so long as he is available to be picked up at the designated hour. The plaintiffs say that the time between the notification and the pickup time is compensable time. We think not. Whatever one's working hours may be, he cannot do what he pleases in the hours before he goes to work, unless what he pleases to do can be completed in time for him to get to work on time. It may be inconvenient and disrupting to have irregular hours of work, as the pilots have, but section 203 makes no provision for that."

In considering the travel time after forty hours of work a week on a non-work day the following situation exists. A pilot who lives on one end of the Canal is assigned to a ship on the end on which he resides and after the transit he must return to his residence by one of the transportation facilities offered by defendant and the pilot is credited with an arbitrary amount of compensable time of $2\frac{1}{3}$ hours for his return trip, unless the trip is made (1) on the pilot's day off or (2) the pilot has already worked 40 or more hours in the week in which the return trip is made.

Plaintiffs claim that they should be compensated for the trip in any event and the Court agrees.

The reasoning of the Court in the Abbott case, supra, is applicable in this case as follows:

" * * * we think that here the Panama Canal has by its practice of paying for it, defined the time of the return trip as working time. Since that time is used for the same purpose in the cases in which the employer does not pay for it, we conclude that the plaintiffs are entitled to be paid for the return trip, even though the return occurs on their day off, or after they have worked 40 hours."

The other claims for extra compensation on the part of the plaintiffs, except the overtime allowed under Section 203 (now 205) of the Federal Employees Pay Act of 1945, are disallowed on the basis that they are compensations claimed in accordance with the pay practices of the maritime industry and could only be allowed under a holding that Section 202 (8) of the Classification Act of 1949 applied to plaintiffs.

6. The Court is of the opinion that the claims of plaintiffs are neither barred by the doctrine of laches nor by the statute of limitations.

In the Abbott case cited above and involving the same parties and raising several of the questions in this case but for earlier dates the Court found that there was no laches on the part of plaintiff for the period embraced in that hearing which terminated on June 28, 1953. The United States Court of Claims in 112 F.Supp. 801, 125 Ct.Cl. 330, ruled in deciding that case that it did not have jurisdiction after July 1, 1951, as plaintiffs were not employees of the United States after the transfer from Panama Canal to the Panama Canal Company in the sense necessary to give that court jurisdiction.

The plaintiffs thereafter brought this action on June 30, 1954, a year and two days after that decision. In considering the numerosity of the plaintiffs, the distance between the courts and all of the factors it does not appear that the plaintiffs are guilty of laches.

Defendant contends that the period from September 28, 1952 through July 4, 1953, is barred by the Canal Zone three year statute of limitations. This period was not embraced in the original complaint of plaintiffs but was included in the amendment allowed by the Court at the pre-trial conference dated June 20, 1956 through July 2, 1956, permitting the claims of plaintiffs for basic compensation to include the period from Septem-

ber 28, 1952 up until the date of judgment.

The Court does not think defendant's contention is meritorious but agrees with plaintiffs' argument as set out in its Reply Brief that an amendment when made relates back to the date of the original pleading. See: Independence Shares Corporation v. Deckert, 3 Cir., 108 F.2d 51, and Culver v. Bell & Loffland, 9 Cir., 146 F.2d 29.

7. Defendant argues that if plaintiffs are entitled to either additional basic or premium compensation that the defendant is entitled to set-off and recoup from the amount of any such recovery all amounts of compensation it has paid that are in excess of, in addition to, or distinct from the amounts held payable as a matter of law.

The Court by its decision that Section 202(8) of the Classification Act of 1949 is not applicable to plaintiffs largely nullifies this question although its decision that Section 205 (formerly Section 203) of the Federal Employees Pay Act of 1945 is applicable and that the pilots are entitled to be credited with compensable time for travel on trips returning from a transit even though it is on the pilot's day off or in spite of the fact that he may have already worked 40 or more hours in the week for which the return trip is made, still demands that the question be considered.

The Court agrees that the defenses of set-off and recoupment are available to the defendant and so held in overruling plaintiffs' demurrer but credit for payments that defendant has made must be allowed within certain well defined areas.

The Court is not of the opinion that payments made for the improvement of working conditions and standards could when it is discovered that statutory obligations are not met then be used to offset or be credited against the payments due under the statute.

As advanced by plaintiff, credit to defendant by way of set-off or recoupment "could only be had as to payments made for the same hours of work or the same type of duty," however, any monies that have been paid to the plaintiffs due to inaccurate accounting or error of computation could be credited against any sum that might be due them from defendant. In other words, if through some error or oversight one of the plaintiffs was paid for days that he had not worked and for which he was not entitled to be paid either by statute or executive order then such money could be credited or set-off against any sum that might be due him.

Defendant is required by certain statutes to make payments to plaintiffs and into certain funds for plaintiffs.

The Civil Service Retirement Act of May 29, 1930, as amended, 5 U.S.C.A. § 740, 63 Stat. 475, requires payments into a retirement fund from both plaintiff and defendant for the benefit of plaintiff. Payments are made by the defendant for the benefit of plaintiffs to the Government Employees Group Life Insurance fund under the provisions of 5 U.S.C.A. § 2091, 68 Stat. 736. Defendant pays certain home transportation costs for plaintiffs and their families under 5 U.S.C.A. § 73b–3 which are applicable to most other overseas U. S. employees.

There are other Federal laws which under certain conditions require payments by defendant for plaintiff, such as compensation for employees while injured on the job and unemployment benefits.

It is the opinion of this Court that none of these payments can be credited against money due for basic pay in computing the compensation allowed for travel time returning from transit nor for overtime due under Section 205 (formerly Section 203) of the 1945 Act.

The Court is also of the opinion that the allowances made by executive order for holiday pay, room allowances and meals when away from home after transiting the Canal, and the night differential of 10 per cent of the basic rate of pay that was paid during the period of July 1, 1951 to January 18, 1953, are made to fit certain circumstances and were not

intended as overtime compensation nor basic pay but as additional compensation for work done during less desirable hours or in the case of the room allowance and meals to provide subsistence in keeping with the general practice in both Federal work and the maritime industries.

The Court concludes, therefore, that only that money paid to the plaintiffs as basic pay can be set-off or recouped from the plaintiffs in calculating the travel time allowed by this decision unless such travel time amounts to overtime, when it shall be dealt with as other premium pay, and only that money paid to the plaintiffs in accordance with the provision of Section 205 (formerly Section 203) of the Federal Employees Pay Act of 1945 can be set-off or recouped from the plaintiffs in calculating the premium pay or overtime.

Thus, in computing the premium pay due, if any is due, and it develops that the plaintiffs have been paid the basic rate for the overtime hours worked then the defendant shall have to pay them only ½ of the basic pay in addition so that the aggregate will equal the premium pay of time and one-half provided.

If it appears that for certain hours traveled in returning from a transit that neither basic pay nor overtime has been paid and such travel has been completed so that it should be computed as basic pay then only the basic hourly rate shall be applicable, but if such travel time occurs during hours that are considered as overtime in accordance with the provisions of Section 23 of the Act of March 28, 1934 (U.S.C. 1940 edition, Title 5 U.S.C.A. § 673c) then the premium pay of full time and one-half shall be paid.

If it develops in the computation that plaintiffs have received all or more of the basic pay than is due them then they shall recover nothing and the same is true of the premium pay or overtime.

The defendant, in the event it is shown that it has paid either an excess of basic pay or an excess of overtime, shall recover nothing from the plaintiffs because it does not pray for a return of monies overpaid but merely for credit up to the amount that may be found due plaintiffs.

8. The parties have agreed that upon the Court's finding on the question of liability that computations can be made between them that will be satisfactory without the further intervention of the Court.

The counsel for the plaintiffs is therefore directed to prepare an order in accordance with these findings and computations are directed to be made forthwith and upon a completion thereof and a due report to the Court, the counsel for the plaintiffs shall prepare a judgment and the orders shall be left open pending the determination.

As this is a class action questions may arise to determine who are members of the class and the orders are left open for steps necessary to establish or attack the claims of those claiming to fit in the category of Canal Zone Pilot.