**Noah E. PRICE et al., Plaintiffs,**

**v.**

**J. S. GRYGIEL, Colonel, Corps of Engineers, District Engineer, United States Army Engineer District, Wilmington, North Carolina, and the North Carolina State Highway Commission, Intervenor, Defendants.**

**Civ. No. 466.**

United States District Court
E. D. North Carolina,
Elizabeth City Division.

Aug. 15, 1962.

McMullan, Aydlett & White, Elizabeth City, N. C., Wallace R. Gray, Manteo, N. C., for plaintiffs.

Robert H. Cowen, U. S. Atty., for defendant J. S. Grygiel.

Thomas Wade Bruton, Atty. Gen. of North Carolina, for intervenor State Highway Commission.

Russell E. Twiford, Elizabeth City, N. C., amicus curiae for Donald Oden et al.

LARKINS, District Judge.

Plaintiffs, on July 19, 1962, instituted this suit as a class action, as citizens and residents of the Village of Avon in Dare County, North Carolina, against the defendant Grygiel, charging him in his official capacity as District Engineer for the Corps of Engineers in the United States Army Engineer District at Wilmington, North Carolina, with arbitrary and capricious conduct, in that he is about to let a contract for the closing of an inlet, thereby depriving plaintiffs, and others similarly situated, of their lives and property, without due process of law, and in consequence thereof, his actions were ultra vires his authority, and seeking a temporary restraining order against the defendant.

The events leading up to this action began on March 7, 1962 when a devastating storm, without warning swept out of the Atlantic across North Carolina's Outer Banks. The raging sea driven by northeast winds of hurricane force pounded over large portions of this slender chain of sandy islands which lie between the Atlantic and the shallow waters of Pamlico Sound. This storm is now commonly referred to as the Ash Wednesday Storm.

Largest of the islands is Hatteras. It extends southward from Oregon Inlet about forty-five miles to the tip of Cape Hatteras. From the Cape it extends westward about fifteen miles to Hatteras Inlet.

Prior to March 7, 1962, or the Ash Wednesday Storm, as it is known, one could travel by car from the mainland to Oregon Inlet; take a forty-five minute ferry crossing through channels kept dredged by the North Carolina State Highway Commission and the United States Army Corps of Engineers; drive the length of Hatteras Island on the asphalt pavement kept over the shifting sand by the North Carolina State Highway Commission, through one of America's most beautiful and truly unique National Parks; cross Hatteras Inlet by ferry; and drive the length of Ocracoke Island to the Village of Ocracoke, until recently only accessible by water or by air.

The Ash Wednesday Storm broke the weakest link in this fragile chain tying the Outer Banks to the mainland. Between Avon and Buxton was the "Haulover". At this low lying, narrow stretch of Hatteras Island, only a few feet above sea level, residents of years past hauled their boats overland from sound to ocean and returned from the nearby fish-rich Gulf Stream. It was here, about four and one-half miles below Avon, and a mile and one-half north from Buxton, that the ocean cut through the island and now meets the sound. This inlet is hereinafter referred to as Buxton Inlet.

Elsewhere along the island, barrier sand dunes on the ocean front were broken; and in many sections the road was buried under two or three feet of sand. Sand has now been cleared from the road. Across Buxton Inlet, the North Carolina State Highway Commission has built a temporary, single lane, wooden bridge at a cost of about $150,-000.00.

In April, following the storm high tides and wind cut approximately seventy-five feet further into the southern shore. Travel was disrupted for days

while the bridge was extended to a length of about seven hundred feet across the enlarged inlet. On two other occasions it has been closed for repairs. Over this bridge the State of North Carolina is responsible for transporting safely to school in Buxton, during the coming school year, the children of villagers north of the inlet, including those of Avon.

The Office of Emergency Planning, hereinafter referred to as O.E.P., specifically allocated $225,000.00 for filling in Buxton Inlet. This was in cooperation with the State of North Carolina and at the urgent petition of an overwhelming majority of the residents living north and south of the inlet, including those of Avon, some of whom appear on both the petition to close and the complaint to enjoin closing Buxton Inlet.

O.E.P. sent the project on reimbursement basis to the Corps of Engineers' South Atlantic Division Headquarters in Atlanta, Georgia. General E. L. Morris, Division Engineer, ordered the then District Engineer of the Wilmington District, Colonel R. P. Davidson, to proceed with surveys and later to advertise for bids. During the period that these events were taking place, Colonel J. S. Grygiel, one of the defendants in this case, was on duty in Oslo, Norway. It was not until June 18, 1962, that he undertook his new duties as District Engineer for the Wilmington, North Carolina District, which includes the Outer Banks.

Bids were submitted. On July 18, 1962, Colonel Grygiel opened them. Low bidder was Atkinson Dredging Company of Norfolk, Virginia, at $190,000.00. Terms were that the bid must be accepted within thirty days. The deadline is August 18, 1962. Upon acceptance, work is to be completed in one hundred and ten days with liquidated damages of $50.00 per day for each day's delay over the expected completion date. If the Government were prevented from taking advantage of Atkinson's bid, it is unlikely that another bid could be later obtained except at far greater cost, as it would

be for undertaking the work in the face of oncoming winter storms.

On the day that bids were opened, July 18, 1962, Noah E. Price and sixty-one other residents and property owners of Avon instituted, in their own behalf, and in behalf of "all other persons similarly situated who wish to make themselves parties to this action," a suit to temporarily and permanently enjoin Colonel Grygiel from letting the contract with Atkinson or doing anything else to close or fill in Buxton Inlet.

Consideration by the Court of the pleadings in this action left the Court without sufficient information to determine whether or not it had jurisdiction of the action and therefore defendant's Motion to Dismiss was denied and the Court proceeded to hear evidence from both parties going to the merits of the action.

Prior to the hearing the Court personally viewed the scene involved in the subject matter of this action from a helicopter.

After hearing all the evidence of both parties in the form of testimony, affidavits and exhibits, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT.

1. The Ash Wednesday storm, on March 7, 1962, cut a new inlet, known as Buxton Inlet, across Hatteras Island on the Outer Banks of Dare County, off the North Carolina coast, a short distance south of the Village of Avon, and north of the Village of Buxton, said inlet having a variable width of approximately 600 feet, with a depth of 13 feet at high tide.

2. That a temporary bridge over the inlet has been erected by the North Carolina State Highway Commission to restore vehicular traffic over the highway which had been located there prior to the storm.

3. The Office of Emergency Planning specifically allocated $225,000.00 for filling in Buxton Inlet.

4. That invitations to bid upon a contract to close said inlet were opened on July 18, 1962 with Atkinson Dredging Company of Norfolk, Virginia, the low bidder at $190,000.00, provided contract awarded within thirty (30) days.

5. Upon application, on July 23, 1962, by plaintiffs for a temporary restraining order against the defendant Grygiel, the Court fixed July 25, 1962 for a hearing on said application, after notice to the defendant, and on said date this Court issued an Order to the defendant, to show cause, if any he had, on July 27, 1962, why a temporary restraining order should not be granted as prayed for in the Complaint. That on July 27, 1962, at the appointed hour, defendant Grygiel failed to appear, due to a misunderstanding, but upon motion of his counsel, the Assistant United States Attorney, the hearing was continued until July 28, 1962.

6. On that date, after hearing evidence for the defendant, two Motions to Intervene by other parties, argument of counsel, and a Motion to Dismiss by the defendant Grygiel, the Court, after considering the pleadings, affidavits, and other evidence, ordered the Motion to Dismiss denied, the Motions to Intervene to be held under advisement, and issued a temporary restraining order against the defendant, conditioned upon plaintiffs giving bond in the sum of $1,000.00, and set a hearing for August 3, 1962 to hear evidence and determine whether a preliminary injunction should be issued against the defendant pending the trial and final determination of the action on its merits.

7. Upon the hearing on August 3, 1962, the Court allowed Motion to Intervene on behalf of the North Carolina State Highway Commission, as owner of an easement across said new inlet, to which plaintiffs excepted. The Court denied motion to certain residents living north and south of said inlet to intervene in opposition to plaintiffs, but allowed the 14 petitions signed by movants to be used as evidence in behalf of the defendant in opposition to plaintiffs, and permitted their counsel to sit as amicus curiae for them, to which action exception was taken.

8. That the residents of Avon have prior hereto, out of their own resources, constructed sand dunes and dikes around the village to prevent flooding by storms, and in 1944 a severe storm cut an inlet across Hatteras Island, about four (4) miles north of the Village of Avon, which was closed shortly thereafter by the North Carolina State Highway Commission, through the use of its own forces. There is no evidence that the citizens of Avon objected to its closing.

9. That to permit the present inlet to remain open would not, in case of future severe storms, decrease the height of any storm high water at the Village of Avon to any appreciable effect, but would require the expenditure of funds by the United States of America to stabilize the said inlet. Inasmuch as a ferry cannot be operated there, because of the shifting of the channel, an appropriation by the North Carolina State Highway Commission for construction of a permanent bridge structure, at a cost of several millions of dollars would be required whereas the inlet can now be closed for $190,-000.00.

10. That the new inlet is now cut across lands which belong to the United States of America, and the Government is entitled to connect its own land, now separated by said inlet.

11. That the North Carolina State Highway Commission has an easement across said lands and is responsible for maintaining the flow of vehicular traffic across said lands.

12. That in his capacity as a contracting agent for the United States Government, as distinct from his capacity as District Engineer, Colonel Grygiel has authority to obligate the Government by executing contracts not in excess of $100,000.00. Larger contracts, and specifically this one for $190,000.00, would be executed by him only at the direction of the Division Engineer in Atlanta, Georgia. It was to the Division En-

gineer that the project was proposed by O.E.P. and upon him the responsibility lies. Colonel Grygiel exercises no discretion in the undertaking. His duty is only ministerial.

### CONCLUSIONS OF LAW.

1. This is a spurious class action filed on behalf of approximately a majority of the citizens and residents of the Village of Avon, North Carolina. All American Airways, Inc. v. Elderd, 209 F.2d 247 (2d Cir., 1954); Zachman v. Erwin, 186 F.Supp. 681 (S.D.Tex.1959); Boyd v. Panama Canal Co., 160 F.Supp. 50 (D.C. Canal Zone 1958).

2. The Motion to Intervene is allowed as a matter of right on behalf of the North Carolina State Highway Commission, the owner of an easement in the locus in quo. Dowdy v. Hawfield, 88 U.S. App.D.C. 241, 189 F.2d 637 (1951), certiorari denied 342 U.S. 830, 72 S.Ct. 54, 96 L.Ed. 628 (1951); Pure Oil Co. v. Ross, 170 F.2d 651 (7th Cir., 1948).

3. The Motion to Intervene as a matter of right by Donald Oden, and 614 other applicants, and all other parties similarly situated, in order to assert the defenses set forth in their proposed Answer on grounds that representation of applicants' interest by existing parties was inadequate, is not supported by facts and is denied. The movants have failed to show that they may be inadequately represented by present parties to the action and that they will be bound by the judgment entered. Defendant Grygiel, and intervenor defendant, North Carolina State Highway Commission, have effectively presented to the Court the defense urged by the movants, that is, the Buxton Inlet should be closed rather than remain open as plaintiffs contend.

4. That plaintiffs have failed to show probability that they will prevail at the final hearing upon the merits of the case.

5. That plaintiffs have failed to show that the letting of the alleged contract to close or fill the inlet in question will result in irreparable damage to plaintiffs or others similarly situated.

6. That defendant, Colonel J. S. Grygiel, is a District Engineer, an officer in the Corps of Engineers, United States Army Engineer District, stationed at Wilmington, North Carolina, coming to his present command from N.A.T.O., Oslo, Norway on June 18, 1962, and in his individual capacity had nothing to do with the present proposal to contract for the closing of the inlet at the locus in quo, since all of the plans and specifications were prepared by his predecessors in office and all negotiations for the procurement of funds were completed before his present tour of duty at Wilmington, North Carolina began. That the project proposed is, in truth, and in fact, an act of the United States of America who seeks to join its own lands on Hatteras Island which has been separated by said storm waters and winds of March 7, 1962.

7. That the defendant Grygiel is not, by opening the bids and proposing to contract for the construction and closing of the inlet, known now as Buxton Inlet, acting ultra vires his authority, and is not acting in a capricious and arbitrary manner, but is carrying out the command of his superiors.

8. This Court is without jurisdiction of this action because of the lack of indispensable parties, to wit, the Division Engineer, United States Army Corps of Engineers and the Secretary of the Army. Any decree entered in this action would not effectively grant the relief sought by expending itself upon the subordinate officer who is the defendant Grygiel herein. The defendant Grygiel performs merely administrative duties in the letting of the contract to close Buxton Inlet and is without power to authorize bids on such contract or to effectively prevent letting of the contract. Williams v. Fanning, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95 (1947); Stroud v. Benson, 254 F.2d 448 (4th Cir., 1958).

9. That for want of jurisdiction over indispensable parties, this action should be dismissed.

Therefore, it is ORDERED that the temporary restraining order heretofore

issued by this Court in this action on July 31, 1962 be, and the same is hereby dissolved, and the plaintiffs taxed with the costs of this action.

It is further ORDERED that the Motion to Intervene filed by Donald Oden and others be, and the same is hereby denied.

It is further ORDERED that the Motion to Intervene filed by the North Carolina State Highway Commission be, and the same is hereby allowed.

It is further ORDERED that this action be, and the same is hereby dismissed.