**ABBOTT et al. v. UNITED STATES.**

No. 50208.

United States Court of Claims.
June 2, 1953.

Francis P. Noonan, Washington, D. C., for plaintiffs.

Kendall M. Barnes, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

Each of the plaintiffs has been employed as a ship pilot at the Panama Canal all or a part of the time since July 1, 1945. They sue to recover extra compensation for the services which they have performed on Sundays and holidays, and for overtime on any days during that time. The majority of them are still so employed, and they ask for compensation up to the time when the court renders judgment in this case. Their suit is founded on Section 203 of the Federal Employees Pay Act of 1945, 59 Stat. 295, 5 U.S.C.A. § 913, and the Classification Act of 1949, 5 U.S.C.A. § 1071 et seq.

The Government moves for a summary judgment dismissing the petition, on the ground that this court does not have jurisdiction to hear and decide this case.

The plaintiffs were, until July 1, 1951, employees of the agency of the United States known as the Panama Canal, an independent, unincorporated agency in the executive branch of the Government. As such, if they had a claim for pay, it was enforceable directly against the United States, and only in this court. Act of October 31, 1951, 65 Stat. 727, 28 U.S.C. § 1346(d). But the legal status of the plaintiffs' employer was materially changed on July 1, 1951, and it is that change which, the Government says, has removed jurisdiction from this court.

Prior to June 29, 1948, there were two agencies operating in the area of the Panama Canal. One was The Panama Canal named above, which carried on the government of the area and also operated the canal. As we have said, it employed the plaintiffs. The other was the Panama Railroad Company, which had been organized by private interests as a New York corporation in 1849 and had built and operated a railroad on the Isthmus of Panama. The Act of June 28, 1902, c. 1302, 32 Stat. 481, provided for the construction of the Panama Canal. Pursuant to that statute, the United States purchased the stock of the Railroad Company which was then owned by France, and the rest of the stock from other private owners. The United States, as sole stockholder, continued the corporation. The corporation operated a railroad across the Isthmus, a steamship line between New York and the Canal Zone, docks and terminal facilities, commissary stores, and certain other business facilities.

By the Act of June 29, 1948, c. 706, 62 Stat. 1075, 48 U.S.C. § 1361 et seq., U.S. Code Cong.Service, 1948, p. 762, the New York corporation was abolished and a federally chartered corporation bearing the same name, the Panama Railroad Company, was created. It took over the assets and assumed the liabilities of the New York corporation and carried on the same functions. The new federal charter took the form of a new Article 3 in Chapter 12 of title 2 of the Canal Zone Code. Section 245 of Article 3 said:

"Within the meaning of the laws of the United States relating to venue in civil actions, the corporation shall be deemed to be an inhabitant and resident both of the southern judicial district of New York and of the Canal Zone."

By the Act of September 26, 1950, c. 1049, 64 Stat. 1041, U.S.Code Cong.Service 1950, p. 1035, the statement of purpose in Section 249 was amended to include the operation by the Railroad Company of the Canal itself, which, as we have seen, had formerly been operated directly by the United States. A new section 256 was inserted by the Act of September 26, 1950, which section authorized the President to transfer to the corporation the Canal and the facilities and appurtenances related thereto, and certain other facilities and appurtenances, and all or so much as he might

determine to be necessary of the personnel, property, records, related assets, contracts, obligations and liabilities of or appertaining to the Canal and the transferred facilities and appurtenances.

The Act of September 26, 1950 also changed the name of the corporation to Panama Canal Company, and changed the name of the agency theretofore known as the Panama Canal, to Canal Zone Government.

The President by Executive Order No. 10263 of June 29, 1951, U.S.Code Congressional and Administrative Service 1951, p. 1050, made the transfer, effective July 1, 1951, covering everything which he was authorized by the statute to transfer.

The Government urges, in support of its denial of our jurisdiction, that the plaintiffs have, since July 31, 1951, been employees of the Panama Canal Company, hence any claim that they may have for wages since that date would be against that company, their employer, and not against the United States. As to the plaintiff's claims for wages alleged to have accrued before July 31, 1951, the Government says that the statute and Executive Order transferring the liabilities of the Panama Canal, the former executive agency of the Government, to the Panama Canal Company, amounted to a removal of jurisdiction from this court, which can entertain suits only against the United States. It says that this is the result, even as to those plaintiffs who were included in the original petition, filed June 28, 1951, three days before the liabilities were transferred from the United States to the corporation.

■ Congress has, of course, the power to withdraw its consent that the United States be sued, Hannevig v. United States, 84 F.Supp. 743, 114 Ct.Cl. 410, 414 and cases there cited, and to withdraw jurisdiction from a court of its creation, even as to pending cases, Brunner v. United States, 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786. Congress did not expressly do either of these things in the legislation here involved. It did authorize the President to transfer, and he did transfer, the liabilities of the United States in regard to the Panama Canal to the Panama Canal Company. That may well have meant that the Company could, thereafter, be sued upon obligations which, until the date of the transfer, were enforceable only against the United States. Were the claims of these plaintiffs, accrued before the date of the transfer, such obligations?

■ The plaintiff points us to the Act of October 31, 1951, 65 Stat. 727, 28 U.S.C.A. § 1346(d) which says:

"The district courts shall not have jurisdiction under this section of:

\*  \*  \*  \*  \*  \*

"(2) Any civil action or claim to recover fees, salary, or compensation for official services of officers or employees of the United States."

It will be observed that this legislation was later than the Act of September 26, 1950, which authorized the transfer of the liabilities of the Panama Canal to the Panama Canal Company. If the plaintiffs' petition were dismissed in this court, and they sued in the District Court in the Canal Zone, they would have the difficult task of persuading that court that their case was an unexpressed exception to the statute just quoted. We think that Congress did not intend to deny them a forum for their claims accrued while they were employees of the United States, and that it is more logical to conclude that their right to sue in this court survived. In addition, it might well be that a considerable part of their accrued claim would be barred by the statute of limitations of the Canal Zone, or of New York, if they were obliged now to start new suits in the District Court in one of those jurisdictions. We think Congress did not intend that accrued rights should be thus forfeited.

■ We now consider the plaintiffs' claims for services performed after July 1, 1951, on which date they became employees of the Panama Canal Company. We have no doubt that they could sue that corporation in the District Court for those services. The 1951 statute denying to the District Courts jurisdiction in pay cases of employees of the United States would not

apply. They have not been, in that period, employees of the United States, at least in that sense. Can they also sue in this court?

The fact that the United States has created numerous corporations, of which, it is the sole owner, and endowed them with power to sue and be sued, has created many collateral problems. Our court has held that where such a corporation makes a contract as the agent of the United States, the United States may be sued, just as any principal may be sued on a contract made for him by an agent. John Morrell & Co. v. United States, 89 Ct.Cl. 167; Crooks Terminal Warehouses, Inc. v. United States, 92 Ct.Cl. 401, 414. Any such Government corporation, in all its transactions, in a sense acts as the agent of the Government. But in the instant case, the purpose of the transfer of the Canal to the corporation was to put it under such management and accounting practices that it could be made to pay its own way. Congress seems to have wanted to cut it loose from the United States as far as possible. In employing these plaintiffs after July 31, 1951, the corporation was getting the corporate business done, and was not merely hiring employees as the agent of the United States.

We recognize, of course, that these corporations wholly owned by the Government are hybrid creatures, and that if the equivocal nature of such creatures resulted in fraud upon or other abuse of outside persons, a court would look through the corporate fiction and place liability upon the real principal. The Government has been allowed to set off a debt owed by a person to the Reconstruction Finance Corporation against a debt owed by the Government to that person. Cherry Cotton Mills, Inc. v. United States, 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835, affirming 59 F.Supp. 122, 103 Ct.Cl. 243. We suppose that a similar set off would be allowed, in a proper case, against the Government.

The instant case presents no necessity for piercing the corporate veil in order to do justice. The plaintiffs have, in our opinion, another forum in which to sue, and it is no great hardship for them to have to seek their relief there.

The Government's motion for summary judgment is denied as to those parts of the plaintiffs' claims which are for services rendered before July 1, 1951. As to those parts of the claims which are for services on and after that date, the Government's motion is granted.

It is so ordered.

JONES, Chief Judge, and HOWELL, WHITAKER and LITTLETON, Judges, concur.