**BUTZ ENGINEERING CORPORATION**

v.

**The UNITED STATES.**

**No. 223-73.**

United States Court of Claims.

June 19, 1974.

**620**

Marion Edwyn Harrison, Washington, D. C., attorney of record for plaintiff. Harrison, Lucey, Sagle & Salter, Washington, D. C., of counsel.

Carl Eardley, Sp. Asst. Atty. Gen., with whom was Acting Asst. Atty. Gen. Irving Jaffe, for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

ON DEFENDANT'S MOTION TO DISMISS OR ALTERNATIVE MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge.

In this contract claim, the court faces the first test of its jurisdiction over disputes arising from the operation of the United States Postal Service (USPS). While we hold that we have jurisdiction to entertain plaintiff's suit against the United States for breach of a USPS contract, we conclude that the claim fails on the merits. Accordingly, we grant summary judgment to defendant.

*Facts*

USPS was created as an "independent establishment of the executive branch of the Government of the United States" to replace the former Post Office Department (POD) by the Postal Reorganization Act of 1970 (the Reorganization Act). Pub.L. 91–375, Aug. 12, 1970, 84 Stat. 719.[1] The Reorganization Act, which totally revised and reenacted Title 39 of the U.S. Code, became fully effective July 1, 1971. The dispute at bar derives from a 1971 Postal Service contract for the modernization of the Morgan Station Post Office in New York City.

The advertisement for bids contemplated a two-phase contract, phase one covering design and phase two fabrication and installation. Two competing contractors were initially to be awarded identical contracts and allowed to perform phase I. USPS would then evaluate the two designs for technical merit

---

1. The Act also established a separate Postal Rate Commission. 39 U.S.C. § 3601. All references to Title 39 are to the version as revised and reenacted by the Reorganization Act.

and cost and scheduling requirements, and would presumably allow one contractor to proceed with performance of phase II.

On August 20, 1971, plaintiff entered into Postal Service contract REC 59–72 for phase I of the Morgan Station project. On or about the same date, the Jervis B. Webb Company (Webb) was awarded a virtually identical agreement on the same project. Although both contractors completed timely performance of this competitive phase covering design, USPS ultimately decided not to permit either to proceed with performance of phase II. This development resulted from a decision taken late in the phase I process that the Morgan Station be devoted to letter mail service alone, rather than serve as an all-purpose plant. The project was accordingly turned over to the Corps of Engineers, which did not utilize either contractor's design.

Alleging breach of contract, plaintiff sues for profits anticipated from performance of phase II, and for unreimbursed phase I costs. Defendant moves to dismiss the petition on the ground that this court lacks jurisdiction over USPS contract claims, or alternatively for summary judgment on the merits. Plaintiff has cross-moved for summary judgment on the merits. For the reasons advanced in the sections which follow, defendant's motion to dismiss is denied [2] while that for summary judgment is granted.

*Jurisdiction*

While drawing on specific provisions of the Reorganization Act, defendant's motion to dismiss is premised largely on the theory that, in replacing the POD with USPS, Congress created a public service which was to be self-supporting and liable for its own contractual obligations. Although conceding the Postal Service was founded to serve a public purpose and functions as an instrumentality of the Federal Government, defendant asserts the Reorganization Act requires the present contract claim to be brought against USPS in a federal district court. Plaintiff's petition champions the view that, while USPS may represent a "new breed of governmental animal," its obligations fall within the definition of "any express or implied contract with the United States" in this court's general jurisdictional statute. 28 U.S.C. § 1491 (Supp. II 1972). We assess these contending claims in the light of both the relevant case law and specific provisions of the Reorganization Act.

*The Case Law*

At hand is not the question of whether, when sued in its own name, USPS may claim the sovereign immunity of its parent government. That general question of agency law, once controversial, has basically been answered in the negative. Keifer & Keifer v. RFC, 306 U.S. 381, 388–389, 392, 394, 59 S.Ct. 516, 83 L.Ed. 784 (1939). Moreover, the Reorganization Act specifically authorizes USPS to "sue and be sued in its official

2. We consider without substance plaintiff's suggestion that defendant's liability is governed by the form used to execute the subject contract. Because the agreement was entered into in August 1971, shortly after USPS began operation, the contracting officer used an old POD procurement form, which recited in article 16 that the undertaking was between plaintiff and "the United States of America, hereinafter called the Government." Regulations published in the Federal Register at the time USPS went into operation (prior to the date of contract) explicitly directed that all POD procurement forms were amended by substituting USPS for the United States, and that

this amendment was incorporated by reference into all USPS contracts. Procurement of Property and Services: Interim Regulations, June 30, 1971, § 8, 36 Fed.Reg. 12451, 12453. Since this regulation was specifically identified in article 15 of the contract, it may not be denied that the agreement was amended accordingly. Even were it not so identified, there is ample authority that plaintiff would have been on constructive notice of its effect. Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947); Porter v. United States, Ct.Cl., 496 F.2d 583 (decided May 15, 1974).

name." 39 U.S.C. § 401(1). Our problem is instead the converse, continuing one of whether USPS numbers among those subsidiary instrumentalities for whose actions the United States, as principal, has renounced its *own* immunity.

Judicial efforts to define the scope of defendant's liability for the actions of the legion of federal agencies and corporations spawned by the needs of the modern welfare state reach back at least a half century. Early recognition of defendant's liability in a principal capacity employed the rough formula that the subsidiary instrumentality was "acting or professing to act, mediately or immediately, under the authority of the United States." Ex parte Skinner & Eddy Corp., 265 U.S. 86, 95, 44 S.Ct. 446, 448, 68 L.Ed. 912 (1924). Developing on this view, the Supreme Court more recently remarked:

> That the Congress chose to call it a corporation does not alter its characteristics so as to make it something other than what it actually is, an agency selected by the Government to accomplish purely Governmental purposes.

Cherry Cotton Mills, Inc. v. United States, 327 U.S. 536, 539, 66 S.Ct. 729, 730, 90 L.Ed. 835 (1946).

In applying this theory as a basis for its jurisdiction, this court has emphasized that the contract at bar need not expressly describe defendant's capacity as principal since "[t]he statutes and the purpose for which the [Government] corporation was organized disclosed the agency" relationship. John Morrell & Co. v. United States, 89 Ct.Cl. 167, 169 (1939). *See also* National Cored Forgings Co. v. United States, 132 F.Supp. 454, 458–459, 132 Ct.Cl. 11, 18–19 (1955).

Most recent and instructive of this line of decisions is National State Bank of Newark v. United States, 357 F.2d 704, 174 Ct.Cl. 872 (1966), a case involving a contractual undertaking of the Federal Housing Administration in which the court construed the Tucker Act to constitute a "broad" waiver of sovereign immunity by the United States. The key to the Newark holding was that, when a federal instrumentality acts within its statutory authority to carry out defendant's purposes, the United States submits itself to liability under the Tucker Act *unless* "some specific provision to the contrary" exists. 357 F.2d at 707, 174 Ct.Cl. at 877.[3] In common-sense terms, the object in all such jurisdictional disputes is to determine if the agency in question is "doing work of the government." 357 F.2d at 708, 174 Ct.Cl. at 879. *See* Keifer & Keifer v. RFC, *supra*, 306 U.S. at 389, 59 S.Ct. 516. We may, then, fairly summarize that, where the agency whose operations are in dispute concededly functions as an instrumentality of the Federal Government, the burden is on defendant to demonstrate that this court is without jurisdiction to hear the claim.[4]

While jurisdiction under the Tucker Act over USPS activities has not been litigated prior to this suit, the case law concerning the relationship between USPS and defendant in other frameworks is largely inconclusive. *Compare* Detroit Window Cleaners Local 139 Insurance Fund v. Griffin, 345 F.Supp. 1343 (E.D.Mich.1972), and Lawhorn v. Lawhorn, 351 F.Supp. 1399 (S.D.W.Va. 1972), with White v. Bloomberg, 345 F.

---

3. Also falling within this line of cases construing the expanse of the Tucker Act is Abbott v. United States, 112 F.Supp. 801, 125 Ct.Cl. 330 (1953). That decision, however, represents a mild deviation in the general development of the law on this subject, and is discussed *infra*.

4. We put to one side, in this connection, the similar yet distinguishable line of cases involving the court's jurisdiction over under-takings by entities not formally a part of the federal establishment. See Housing Corp. of America v. United States, 468 F.2d 922, 199 Ct.Cl. 705 (1972) (federally-financed city housing commission); D. R. Smalley & Sons, Inc. v. United States, 372 F.2d 505, 178 Ct.Cl. 593, cert. denied, 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed.2d 97 (1967) (State of Ohio); Pulaski Cab Co. v. United States, 157 F.Supp. 955, 141 Ct.Cl. 160 (1958) (military base exchange).

Supp. 133 (D.Md.1972), and Leonard v. United States Postal Service, 360 F. Supp. 449 (D.Mass.1973), aff'd 489 F.2d 814 (1st Cir. 1974). Thus, meaningful application of our jurisdictional formulae to the present case requires, as defendant urges, consideration of the statutory provisions at hand.

*The Reorganization Act*

■ No compelling indication of Congressional intent concerning defendant's role as principal to the actions of USPS emerges from the Reorganization Act's specific provisions. The statutory pattern is sufficiently clear, however, to demonstrate that defendant has failed to carry its burden of proving, under the circumstances, the United States is not an appropriate party to this suit.

Defendant relies too heavily on the theoretical postulate that Congress' design to establish the Postal Service on a self-supporting basis as an efficient business, *see* 39 U.S.C. §§ 2002, 2003, 2005, 3621, cast USPS totally out of its predecessor's niche in the federal establishment. To begin with, the premise is a dubious one. Congress has wide discretion to endow a governmental agency with any combination of powers and immunities as it sees fit. See FHA v. Burr, 309 U.S. 242, 244, 60 S.Ct. 488, 84 L.Ed. 724 (1940); Monolith Portland Midwest Co. v. RFC, 178 F.2d 854, 858 (9th Cir. 1949), cert. denied, 339 U.S. 932, 70 S.Ct. 668, 94 L.Ed. 1352 (1950). Whether a governmental corporation, agency, or other type of instrumentality is administered by sound commercial practices or as a bureaucratic boondoggle need not affect the legal status of the entity.

The relevant legislative history indicates that, while Congress was basically concerned with reorienting national postal service on a basis of greater efficiency and self-sufficiency, it in no way intended to strip an overhauled POD of its public service character. Nowhere is mention made of decreased legal responsibility of the United States as a result of postal service revision. Express purposes for reform included (1) reducing political pressure in order to inspire a more business-like approach to postal service; (2) providing a framework for collective bargaining by postal employees; (3) affording postal employees an opportunity for higher pay and faster advancement than other government officials. 1970 U.C.Code Cong. & Admin.News pp. 3649, 3650. While the role of *Congress* in daily postal affairs was to be reduced and responsibility in this field consolidated, it was never suggested that USPS would be less a *governmental* institution than POD had been. *See id.* at 3653–54; S.Comm. on Post Office and Civil Service, 93D Cong., 1st Sess., Explanation of the Postal Reorganization Act and Selected Background Materials 167–68 (Comm. Print 1973). The House Post Office and Civil Service Committee reported:

> The Postal Service is—first, last and always—a public service. [The Reorganization Act] is designed to prevent public service from involving public wastefulness in postal matters.

1970 U.S.Code Cong. & Admin.News p. 3668.

In this connection, under section 208 of the Reorganization Act, Congress reserved the power to "alter, amend, or repeal any or all of the sections of this title * * *." Although the postal deficit is to be eliminated by January 1, 1978, it is frankly anticipated that USPS will remain perpetually dependent on Congressional appropriation for some share of its revenue needs. 1970 U.S.Code Cong. & Admin.News p. 3659; Hearings Before the S. Comm. on Post Office and Civil Service on Reorganization of the Postal Establishment to Provide for Efficient and Economical Postal Service, 91st Cong., 1st Sess. 274 (1969) (*Hearings*). Former Postmaster General Winton Blount testified during Senate consideration of the Reorganization Act that USPS would come to Congress for support should it not be self-sustaining after 1978. Hearings at 288. And, dis-

cussing the transfer of assets from POD to USPS, he remarked:

> We are not disposing of this asset to another company, or, if you will, to another entity. We are just changing the form of our organization, and the organization is still owned by the Federal Government.

*Hearings at 290.*

Particularly revealing of Congress' intent to maintain USPS as an integral entity of the federal establishment, while enabling it to function as an efficient enterprise, are two introductory articles of the Reorganization Act. Section 101(a) recites in part:

> The United States Postal Service shall be operated as a basic and fundamental service provided to the people by the Government of the United States, authorized by the Constitution, created by Act of Congress, and supported by the people * * *.

We are mindful of Congress' invocation in this section of its power under Article I, section 8, clause 7 of the Constitution to legislate postal services.

Section 201 of the Reorganization Act goes on to define USPS as "an independent establishment *of the executive branch of the Government of the United States*" [emphasis added]. We find significant in this connection the general definitional section of the Judicial Code, 28 U.S.C. § 451 (1970), which reads in part:

> The term "agency" includes any * * * independent establishment * * * of the United States * * * unless the context shows that such term was intended to be used in a more limited sense.

Use has been made of this provision by federal courts to take jurisdiction over claims concerning other agencies on the ground that the United States is involved in some principal capacity. Acron Investments, Inc. v. Federal Savings & Loan Insurance Corp., 363 F.2d 236

(9th Cir.), cert. denied, 385 U.S. 970, 87 S.Ct. 506, 17 L.Ed.2d 434 (1966). *See also* Greider v. Woods, 177 F.2d 1016, 1018 (10th Cir. 1949) (the Housing Expediter).

Congress has shown it is capable of unequivocally cleaving a public service or corporation from all governmental nexus when it so desires. In establishing the Securities Investors Protection Corporation, for instance, the legislature bluntly directed that the corporation "shall not be an agency or establishment of the United States Government * * *." 15 U.S.C. § 78ccc(a)(1) (1970).

By contrast, the context of the Reorganization Act does *not* require a limited reading of the term "independent establishment" for our jurisdictional purposes. Indeed, section 6(*l*)(3) of the Reorganization Act specifically amends 31 U.S.C. § 724a, governing payment of judgments against defendant, to read:

> Notwithstanding the other provisions of this section, judgments against the United States arising out of activities of the United States Postal Service shall be paid by the Postal Service out of any funds available to it.

The inference is inescapable that jurisdiction exists to award such judgments against the United States. Defendant urges the provision be narrowly construed to cover only instances in which United States' liability is provided for in other sections of the Reorganization Act, such as that conferring the power of eminent domain on USPS. 39 U.S.C. § 401(9). The broad terms of 31 U.S.C. § 724a, however, suggest no basis for such a restricted reading. All USPS "activities" are seemingly covered.

We are not moved by defendant's argument that USPS must be sued in its own name [5] for its contractual obligations since Congress has directed judgment payments are to be made only from separate Postal Service funds and has not appropriated general funds for that

---

5. And in United States district court.

purpose. We first note that Congress has, in fact, expressly exercised its *appropriating* power in defining the funds USPS, even in its anticipated role of basic self-sufficiency, is to utilize. 39 U.S.C. § 2401(a). *See also,* 39 U.S.C. § 2003. Thus, the line of decisions holding the United States not liable for its non-appropriated fund activities is without relevance since the requirement of 28 U.S.C. § 2517 that judgments against defendant be "paid out of any general appropriation therefor" is satisfied by the terms of the Reorganization Act. *See* Kyer v. United States, 369 F.2d 714, 718, 177 Ct.Cl. 747, 751 (1966), cert. denied, 387 U.S. 929, 87 S.Ct. 2050, 18 L.Ed.2d 990 (1967).

Especially telling in this regard is the fact that Congress had long directed in the introductory sentence to 31 U.S.C. § 724a that judgments against the United States for obligations of the POD were to be paid out of POD funds. Even if execution on such a judgment proved futile due to exhaustion of USPS funds, the procedure authorized under amended 31 U.S.C. § 724a would be no less valid since petitioner obtains its right to sue from Congress and, hence, must take it subject to such restrictions as have been imposed. FHA v. Burr, *supra,* 309 U.S. at 251, 60 S.Ct. 488.

Support for this construction of amended 31 U.S.C. § 724a is found in Reorganization Act section 409(a), where the federal district courts are conferred "original but not exclusive jurisdiction" over actions against USPS. At oral argument, it was brought out that the original version of this section included jurisdiction in the Court of Claims, but the legislative history reveals no explanation as to why such provision was ultimately deleted. The court gleans from this background the conclusion that the legislative drafters considered the provision redundant in section 409(a) since the Court of Claims already exercises comparable jurisdiction under the Tucker Act.

■ Further evidence for the conclusion that the United States was to continue responsible for USPS activities is found in the remaining sections of article 409: (b) directing that the procedural rules for suits involving USPS be those employed in suits involving the United States; (c) applying the Federal Tort Claims Act (FTCA) to USPS activities; and (d) calling on the Department of Justice to furnish legal representation to USPS as it may require. *See also* 39 U.S.C. § 2605. Finally, it is well settled that an agency's "sue-and-be-sued" clause does not nullify the concurrent liability of the United States as principal. National State Bank of Newark v. United States, *supra,* 357 F.2d at 711, 174 Ct.Cl. at 884; Korman v. FHA, 72 App.D.C. 245, 113 F.2d 743, 746–747 (1940). *See also* Sloan Shipyards Corp. v. U. S. Fleet Corp., 258 U.S. 549, 567–568, 42 S.Ct. 386, 66 L.Ed. 762 (1922).[6]

Other capacities of USPS under revised Title 39 which defendant concedes are "not normally found in strictly commercial companies," *see* National State Bank of Newark v. United States, *supra,* 357 F.2d at 708, 174 Ct.Cl. at 879, 870 include:

*Section 401(9)*—to exercise eminent domain and to have the priority of the United States with respect to payments of debts out of bankrupt, insolvent, and decedents' estates;

*Section 404(7)*—to investigate postal offenses and civil matters relating to postal service;

*Section 404(8)*—to offer and pay rewards for information and services in connection with violations of postal laws;

*Section 405(a)*—to require the Public Printer to print certain matters;

---

**6.** In this connection, see Association of American Publishers, Inc. v. Governors of United States Postal Service, 157 U.S.App. D.C. 397, 485 F.2d 768 (1973), in which the court comments, at 771, that the sue-and-be-sued clause is a provision common to "administrative agencies" such as the Federal Reserve Board, ICC, FTC, NLRB and SEC, for whose actions the United States remains liable as principal.

*Section 407(a)*—to negotiate treaties with approval of the President;

*Sections 3006, 3008*—to prohibit pandering through the mails and administratively to prosecute for the mailing of pornography;

*Sections 5206, 5403, 5604*—to impose fines on surface, air and ocean carriers of mail.

In addition:

*Section 1001(b)*—With certain exceptions, Postal Service employees shall be considered part of Civil Service;

*Section 2003*—The USPS revolving fund in the Treasury shall be composed of both its own earned monies and Congressional appropriations;

*Section 2005(d)(3)*—Postal Service obligations issued are acceptable as security for obligations of the United States;

*Section 2008(a)*—The General Accounting Office (GAO) audits USPS;

*Section 2009*—USPS must submit its budget for approval to the Office of Management and Budget;

*Section 2402*—The Postmaster General shall report annually to the President and to Congress;

*Section 2601(a)*—GAO may collect uncollectable USPS accounts.

This is not to say that defendant is unable to cite articles of the Reorganization Act to support its contention that Congress founded USPS as an entity beyond the traditional pale of the federal establishment. But, as suggested above, such provisions are unable to outweigh the more convincing indicia of Congressional intent marshalled by plaintiff.

Most impressive of the elements in defendant's arsenal is 39 U.S.C. § 410(a), directing that "no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets or funds * * * shall apply to the exercise of the powers of the Postal

Service." *See also* 39 U.S.C. § 401(3), authorizing USPS to enter into and perform its own contracts. Defendant urges that these articles, read in conjunction with the explicit provision in 39 U.S.C. § 409(c) for the FTCA to apply to USPS activities, divest the courts of jurisdiction over the United States for USPS contract claims. Section 410(a), however, appears to refer not to procedure and jurisdiction but to the Postal Service's discretion to contract according to its *own* needs and regulations. Indeed, this effort to enable USPS to function as a business enterprise meets substantial qualification in subsection (b) of the provision, where many of the standard statutory requirements of government contracting are made applicable to postal undertakings. Moreover, defendant's effort to draw a negative inference from the lack of a provision for contract suits correlative to that for tort claims is unjustified. Congress might have considered it unnecessary to provide expressly for contract litigation in the Court of Claims because of the obvious impact of amended 31 U.S.C. § 724a.

Similarly, those provisions empowering USPS administratively to settle and compromise claims against itself, 39 U.S.C. §§ 401(8), 2008(c), 2601(b)(2), 2603, rather than leave such responsibility to the GAO, *see* 31 U.S.C. §§ 71–74 (1970), Comptroller General Opinion Letter B—164786, Oct. 8, 1970, do not speak to the issue of *court* jurisdiction to resolve such disputes. Language in Leonard v. United States Postal Service, *supra*, that the settlement articles demonstrate Congressional intent to create a Postal Service independent of the Executive Branch, constitutes *dictum* since that case required only a construction of the plain meaning of 39 U.S.C. § 2008(c).

Defendant further asserts that 39 U.S.C. § 2002(a)(2) [7] represents a Con-

---

7. All liabilities attributable to operations of the former Post Office Department shall remain liabilities of the Government of the United States, except that upon commencement of operations of the Postal Service, the unexpended balances of appropriations

gressional effort to extricate the United States from liability for USPS activities. While this construction is a reasonable one, the context of the Reorganization Act as a whole indicates the Congress was more concerned in this provision with preserving the assets of the fledgling Postal Service than in affecting defendant's liability as principal. Subsection (d) of the article goes on to indicate USPS is, in terms of working capital, to serve as an integral element within the federal bureaucracy.

Finally, sections 3206 and 3216 of the revised title, concerning reimbursement for sharing of federal property among agencies and payment by other agencies for the franking privilege, in no way constitute a break with the past in terms of postal operations. These two sections merely adopt the language and substance of former 39 U.S.C. §§ 4156 and 4167, respectively.

Defendant also relies heavily on two federal court decisions, both distinguishable. The recent decision in White v. Bloomberg, *supra*, that the Reorganization Act gives the Court of Claims no jurisdiction in USPS pay cases, is at first blush squarely on point for defendant. 345 F.Supp. at 142–143. However, because the United States was not a named defendant and the district court could there have merely determined it had jurisdiction under the plain wording of 39 U.S.C. § 409(a), we choose to disregard most of the language upon which defendant relies as lengthy *dicta*.

More troublesome is defendant's citation of Abbott v. United States, 112 F. Supp. 801, 125 Ct.Cl. 330 (1953), where the court held it was without jurisdiction to hear a petition against the Panama Canal Company (PCC), which had been expressly created as an "agency or instrumentality" of the United States and could "sue and be sued in its official name." The court there emphasized that the business purposes for which

PCC was formed were strong evidence that "Congress seems to have wanted to cut it loose from the United States as far as possible." 112 F.Supp. at 804, 125 Ct.Cl. at 335. The court observed that the Panama Canal Company Act did not expressly oust the Court of Claims of jurisdiction, but that other factors must be weighed to determine defendant's liability as principal.

That case, however, was a pay suit, and PCC employees, unlike those of USPS, are not considered part of Civil Service. In addition, 5 U.S.C. § 5102(a)(1)(G)(vii) (1970) excludes PCC from the definition of "agency" for purposes of the Classification Act, while USPS is not so excluded. It is also to be noted that Congress selected a "public establishment" format for USPS, rather than the corporate form originally suggested for it and which the PCC represents. More importantly, however, *Abbott* represents a restricted reading of Tucker Act jurisdiction which appears out of keeping with the case law standard described above and, hence, should probably be contained to its facts.

In summary, it cannot be denied that Congress in the Reorganization Act has limited the degree of defendant's control of USPS financial responsibilities, an important criterion in past jurisdictional cases of this nature. *See* Cherry Cotton Mills, Inc. v. United States, *supra*; Crooks Terminal Warehouses, Inc. v. United States, 92 Ct.Cl. 401 (1941). However, the most important characteristic giving rise to liability on the part of the United States, which *is* here satisfied, is that USPS was "created solely to perform governmental objectives and it so acted * * *." Crooks Terminal Warehouses, Inc. v. United States, *supra* at 414.

The result thus reached is not startling; no adverse impact on the functioning of USPS is hereby engendered since the Postal Service could always be sued

made to, held or used by, or available to the former Post Office Department and all liabilities chargeable thereto shall become assets and liabilities, respectively, of the Postal Service.

in district court. *Cf.* FHA v. Burr, *supra,* 309 U.S. at 245, 60 S.Ct. 488. Defendant conceded at oral argument that its jurisdictional challenge was largely a "matter of principle."

Furthermore, to deny jurisdiction in this case would be to shut the door of the Court of Claims on an important aspect of government contract law, thereby encouraging an unnecessary bifurcation in the future development of this law. Such "Congressional idiosyncrasy" is not lightly inferred. Keifer & Keifer v. RFC, *supra,* 306 U.S. at 393, 59 S.Ct. 516.

■ Finally, our perception of the present petition might be different had it appeared a shallow exploitation of the deep-pocket theory. Instead, however, it constitutes a legitimate use of an alternative forum for suits against the sovereign. Payment of any judgment must be made from available USPS funds alone. Defendant on numerous occasions benefits from the principal-agency theory in the arena of federal jurisdictional disputes. *See* Cherry Cotton Mills, Inc. v. United States, *supra*; Acron Investments, Inc. v. Federal Savings & Loan Insurance Corp., *supra*; Korman v. FHA, *supra*; Greider v. Woods, *supra*. Common fairness demands that it accept the responsibilities of this judicial concept, in return.

### Breach Claim

Having taken some pain to explicate our basis of jurisdiction in this case, we find the merits of the present claim warrant, unhappily for plaintiff, only summary treatment. No material factual controversy existing, the parties have lodged cross-motions for summary judgment. We hold for defendant.

■ Plaintiff's petition asserts that defendant breached the Morgan Station contract by refusing to allow plaintiff to proceed with phase II of the undertaking, involving execution and installation of the design produced under phase I. Plaintiff contends that defendant could abort performance of phase II only by formally invoking the contract's standard termination-for-convenience clause. Defendant counters, and we agree, that the explicit terms of Postal Service contract REC 59–72 make clear that the parties undertook performance only of phase I.[8]

The contract's "Schedule of work" recites the contractor's objective of both developing designs for the Morgan Station, and fabricating and installing the proposed modernization system. It then goes on to describe in detail both phases of projected work. In paragraph C of the "Additional Provisions," however, the parties agree:

Although, the Schedule of Work is written for two phases, *this contract, as executed, is for work to be performed under Phase I only.* Within 30 days after completion of the Phase I work, the parties *may at the option of the United States Postal Service enter into negotiations for the performance of the Phase II work* [emphasis added].

It would be difficult to imagine a more direct statement by the parties as to the scope of their agreement, and plaintiff is bound by it.

■ Plaintiff asserts the contract as a whole is ambiguous and must be interpreted in the light of the parties' alleged prior understanding that defendant would be contractually bound to allow

---

8. Defendant initially argued that plaintiff's signing of a release on January 11, 1972, as a condition precedent to final payment for phase I performance barred its claim to rights under phase II. This contention, however, has been withdrawn. Nevertheless, the release is binding, as plaintiff admits, for those matters it concededly covers, viz, claims under phase I. J. G. Watts Construction Co. v. United States, 161 Ct.Cl. 801, 805 (1963). No allegation has been made that the release was signed under duress or treated by the parties as ineffective, see Winn-Senter Construction Co. v. United States, 75 F.Supp. 255, 260, 110 Ct.Cl. 34, 65–66 (1948), or that it was not supported by consideration, Paccon, Inc. v. United States, 399 F.2d 162, 172, 185 Ct.Cl. 24, 41 (1968). Accordingly, plaintiff's claim here for an additional payment of $68,910.91 for its phase I work is groundless.

the party with the superior modernization design to proceed with phase II. This contention, however, flies in the face of the parol evidence rule, by which all negotiations prior and contemporary to the writing of a contract are considered merged in, and cannot amend or add to, the written terms of the document. Brawley v. United States, 96 U.S. (6 Otto) 168, 173–174, 24 L.Ed. 622 (1878); Baggett Transportation Co. v. United States, 319 F.2d 864, 868, 162 Ct.Cl. 570, 577 (1963). Because the written terms here in question are on their face unambiguous, no legitimate purpose exists for introducing evidence of such prior negotiations and understandings. Sylvania Electric Products, Inc. v. United States, 458 F.2d 994, 1005–1006, 198 Ct.Cl. 106, 126–128 (1972).[9] Thus, plaintiff at best can be said to have contracted for a *chance* to negotiate for the phase II work together with Webb.

▉ Even were plaintiff to be considered an unsuccessful bidder for the phase II work, a role which it disclaims, no adequate claim for damages would be made out. No allegation of "bad faith or lack of reasonable basis" has been advanced for defendant's decision not to allow either phase I contractor to proceed with phase II. *See* Keco Industries, Inc. v. United States, 492 F.2d 1200, 1203–1204, 203 Ct.Cl. —, — (1974). Typically, the Government contracting authority retains the prerogative to reject *all* bids without liability, Robert F. Simmons & Assocs. v. United States, 360 F.2d 962, 175 Ct.Cl. 510, 512 (1966), and defendant's purpose in rejecting both candidates for phase II work here was *prima facie* reasonable. *See* Keco Industries, Inc. v. United States, *supra*, 492 F.2d at 1204, 203 Ct. Cl. at —.

Nor has plaintiff produced any support for its assertion that defendant was required to operate by means of formal termination-for-convenience. Indeed, plaintiff has failed to produce one statute, regulation, contract provision, or judicial opinion to support its position on the merits. As a matter of law, then, it has no substantive claim.

Accordingly, defendant's motion to dismiss is denied; defendant's alternative motion for summary judgment is granted; plaintiff's cross-motion for summary judgment is denied; and the petition is dismissed.

SKELTON, Judge (concurring and dissenting):

I concur with the result reached by the majority that plaintiff is not entitled to recover and its petition should be dismissed.

However, I feel that notwithstanding the commendable study and detailed treatment of the jurisdictional question in the majority opinion written by Judge Kunzig, I am compelled to dissent with regard to this question. In my opinion, we do not have jurisdiction of suits against the United States Postal Service (USPS). The Reorganization Act, 39 U.S.C. § 101 et seq., provided in unequivocal terms that United States District Courts shall have original jurisdiction of all actions brought against the Postal Service. In this regard, the Act provides as follows:

§ 409. Suits by and against the Postal Service.

(a) Except as provided in section 3628 of this title, [not pertinent here] *the United States district courts shall have original* but not exclusive *jurisdiction* over all actions brought by or against the Postal Service. Any action brought in a State court to which the Postal Service is a party may be

---

9. Indeed, evidence of negotiations leading to the final wording of paragraph C appears further to undermine plaintiff's position. Paragraph C originally included a guaranteed phase II fee of 7.8% up to a certain limit. This provision was dropped in the final version of the paragraph and replaced by a stipulation for a negotiated phase II fee. This background further supports the paragraph's plain meaning that phase II work was to be treated as a project separate from phase I for contract purposes.

removed to the appropriate United States district court under the provisions of chapter 89 of title 28. [39 U.S.C. § 409(a) (1970)]

It is clear that the words "but not exclusive jurisdiction" in the Act refers to suits filed in State courts where concurrent jurisdiction exists unless they are removed to United States District Courts. The Act nowhere vests jurisdiction in the United States Court of Claims. As a matter of fact, as pointed out by the majority, the legislative history of the Act shows that at one point, jurisdiction was conferred on the U.S. Court of Claims, but this provision was removed before final passage. This incident is significant, but we need only to rely on the provision of the Act as finally passed, which is quoted above, showing that this court does not have jurisdiction of suits against the Postal Service.

Furthermore, a claim against the Postal Service is not a claim against the United States. See White v. Bloomberg, 345 F.Supp. 133, 142 (D.Md.1972). In that case the court said that the United States Postal Service:

[I]s an establishment existing independently of the executive branch of the United States with the power "to sue and be sued in its official name." * * * A suit against it, * * * for back pay is not a claim against the United States within the meaning of 28 U.S.C. § 1346(a)(2). * * * [Footnotes omitted]

No other case has been cited that bears directly on the question under discussion.

However, the case of Abbott v. United States, 112 F.Supp. 801, 125 Ct.Cl. 330 (1953) involved facts that closely resemble those in the instant case. In that case the Panama Canal, which was a government operation, was incorporated by statute as the Panama Canal Company. Various employees sued the United States in this court to recover wages for services rendered both before and after the company was incorporated. The government challenged the court's jurisdiction. The court held this court had no jurisdiction for claims for services rendered after the creation of the corporation. The court held:

* * * Any such Government corporation, in all its transactions, in a sense acts as the agent of the Government. But in the instant case, the purpose of the transfer of the Canal to the corporation was to put it under such management and accounting practices that it could be made to pay its own way. Congress seems to have wanted to cut it loose from the United States as far as possible. In employing these plaintiffs after July 31, 1951, the corporation was getting the corporate business done, and was not merely hiring employees as the agent of the United States.

We recognize, of course, that these corporations wholly owned by the Government are hybrid creatures, and that if the equivocal nature of such creatures resulted in fraud upon or other abuse of outside persons, a court would look through the corporate fiction and place liability upon the real principal. * * *

The instant case presents no necessity for piercing the corporate veil in order to do justice. The plaintiffs have, in our opinion, another forum in which to sue, and it is no great hardship for them to have to seek their relief there. [Id. 112 F.Supp. at 804, 12 Ct.Cl. at 335.]

See also Zimberg v. United States, 177 Ct.Cl. 1104 (1966); and Payne v. United States, 179 Ct.Cl. 923 (1967), where this court reaffirmed its decision in the Abbott case. It should be pointed out that the Act creating the Panama Canal Company provided that it could be sued in its corporate name. 62 Stat. 1078. We find that in the instant case the statute authorizes suits against the Postal Service in its official name. 39 U.S.C. § 401(1). It appears that Congress intended that the Postal Service would be responsible for claims against

it and that such claims would not be claims against the United States. It follows that if a claim is not against the United States, this court does not have jurisdiction of the claim.

The fact that the government furnished money for the operation of the Postal Service does not make it liable nor responsible for the debts and obligations of the Postal Service nor for claims against it. *See* D. R. Smalley & Sons, Inc. v. United States, 372 F.2d 505, 178 Ct.Cl. 593, cert. denied, 389 U. S. 835, 88 S.Ct. 45, 19 L.Ed.2d 97 (1967).

This court does not have jurisdiction of plaintiff's suit because plaintiff's claim is against the Postal Service and not against the United States, and exclusive jurisdiction of such claims has been conferred by Congress on the district courts.

I would dismiss plaintiff's petition on the ground of lack of jurisdiction in this court.

NICHOLS, J., joins in Judge Skelton's dissent.