In this contracts case, coming before the court on defendant’s motion to dismiss, plaintiff seeks to invoke Tucker Act jurisdiction for its claim against National Trust for Historic Preservation in the United States (National Trust).[1] Plaintiff concedes the absence of an express contract with defendant. Instead, plaintiff contends that National Trust, by virtue of its public purpose and extensive public funding, functions as an agent or instrumentality of the United States, exposing the government to suit on the Trust’s contracts. Defendant argues that this court lacks jurisdiction over plaintiffs claims, as National Trust is a private entity for which the government has not consented to accept liability. We agree with defendant.
The basis for plaintiffs claim is a fixed-price contract with National Trust for renovation of its headquarters building in Washington, D.C. Plaintiff alleges that National Trust breached this contract in several ways, including failure to make timely progress payments, failure to deliver necessary building permits in a timely manner and failure to provide plaintiff with an adequate heating system and building specifications. Asserting that the United States *756 implicitly assumed liability for National Trust’s contractual obligations when Congress created and later began funding the entity, plaintiff brings this action under the court’s Tucker Act jurisdiction over contracts with the government, 28 U.S.C. §1491 (1976).
In the absence of an express contract with the government, which plaintiff has not alleged here,[2] it is well established that plaintiff must demonstrate that the contracting entity is "one of those subsidiary instrumentalities for whose actions the United States, as principal, has renounced its own immunity.” Butz Engineering Corp. v. United States, 204 Ct. Cl. 561, 567, 499 F.2d 619, 622 (1974). This court has recognized such a renunciation of sovereign immunity in several instances where the contracting party was a federal instrumentality, performing federal governmental functions. See, e.g. Breitbeck v. United States, 205 Ct. Cl. 208, 500 F.2d 556 (1974) (activities involved fell under federal authority over interstate commerce); Butz Engineering, supra (United States Postal Service); National State Bank of Newark v. United States, 174 Ct. Cl. 872, 357 F.2d 704 (1966) (Federal Housing Authority); L’Enfant Plaza Properties, Inc. v. United States, 229 Ct. Cl. 278, 668 F.2d 1211 (1982) (Comptroller of the Currency). National Trust, however, is not a federal instrumentality and performs no such functions.
National Trust was created by Act of Congress in 1949 as a "charitable, educational, and nonprofit corporation” with the purpose of receiving and administering nationally significant historical sites, buildings and other objects. 16 U.S.C. §468. The report accompanying the 1949 bill indicates that Congress intended National Trust to mobilize broad-based private support for preservation work and envisioned no public funding of the Trust’s activities at all. h.r. rep. no. 855, 81st Cong., 1st Sess., reprinted in [1949] U.S. Code Cong. Service 2285.
Congress endowed National Trust with a number of characteristics which, while not conclusive when considered singly, as a group point to the non-governmental status of the Trust. The charter statute empowers National *757 Trust to sue and be sued in its corporate name, to acquire property and to contract in its own name and on its own terms. 16 U.S.C. §468c. The statute also authorizes National Trust to adopt a constitution and bylaws, and provides for a Board of Trustees. Id. While the Attorney General, the Secretary of the Interior and the Director of the National Gallery of Art are expressly required to serve as trustees, they represent only a tiny fraction of the 35 members now serving on the Board of Trustees, and cannot conceivably be said to assert governmental control over National Trust. Employees have their salaries fixed by National Trust and do not participate in federal civil service, retirement or disability programs.
The purpose of National Trust was not conceived by Congress as a direct concern of the federal government. In spite of increased federal activity, the House Report that accompanied the National Historic Preservation Act Amendments of 1980 noted that the federal government’s function in regard to historic preservation". . .is mainly to provide stimulus and leadership for what is primarily a state, local and private sector activity.” h.r. rep. no. 96-1457, 96th Cong., 2d Sess. 17, reprinted in [1980] U.S. Code Cong. & Ad. News 6380. The report classified National Trust under "private sector” activities, recognizing "the importance of the non-governmental role in the national historic preservation program.” Id. at 24, [1980] U.S. Code Cong. & Ad. News at 6387. In sum, it is apparent that Congress viewed National Trust and its role in historic preservation as separate from the government and its functions.
Plaintiff, however, places great emphasis on the fact, that, beginning in 1966, Congress began appropriating funds to aid in historic preservation efforts. National Historic Preservation Act of 1966, 16 U.S.C. §470a (1976). These "grants-in-aid” went both to state governments and to National Trust. Id. Since that time, the federal government has increased financial support of National Trust through grant-in-aid programs so that now approximately one-third of the Trust’s funding derives from public funding. Plaintiff asserts that the existence of public funding is *758 alone sufficient to give this court Tucker Act jurisdiction over the contract claim.
Plaintiff has placed the cart before the horse. It is true that, in order for the court to assert jurisdiction over a contract claim, we have held that the contract must obligate publicly appropriated funds. Kyer v. United States, 177 Ct. Cl. 747, 369 F.2d 714 (1966), cert. denied, 387 U.S. 929 (1967). Before the existence or possibility of appropriated funds becomes a relevant inquiry, however, plaintiff must make a showing that the entity is functioning as an instrumentality of the United States. The mere presence of appropriated funds (e.g., through grants or subsidies) is insufficient, in itself, to confer jurisdiction on this court. See Aetna Casualty & Surety Co. v. United States, 228 Ct. Cl. 146, 152 n.7, 655 F.2d 1047, 1052 n.7 (1981) and cases cited.[3]
Even in instances where a major portion of funding for a contract comes from federal monies, and where a high degree of control over performance of the contract has existed, this court has been unwilling to find the privity between plaintiff and the United States necessary to allow it to take jurisdiction. In the seminal case D. R. Smalley & Sons, Inc. v. United States, 178 Ct. Cl. 593, 372 F.2d 505, cert. denied, 389 U.S. 835 (1967), plaintiff sued the federal government for work done on a highway project for the State of Ohio under the Federal-Aid Highway Acts. Although the project was 90% funded and strictly regulated throughout by the federal government, we held that the United States had not thereby waived its sovereign immunity for acts or omissions of the State that carried out the project. Id. at 597-98, 372 F.2d at 507-08. In the instant case, National Trust receives some 30% of its operating budget from federal sources. This bare fact cannot impose liability on the United States. As the Supreme Court noted in United States v. Orleans, 425 U.S. 807 (1976),
Federal funding reaches myriad areas of activity of local and state governments and activities in the private sector as well. It is inconceivable that Congress intended to have *759 waiver of sovereign immunity follow congressional largesse and cover countless unidentifiable classes of "beneficiaries”.
Id. at 816. See also G-Lam Corporation v. United States, 227 Ct. Cl. 764 (1981); Housing Corp. of America v. United States, 199 Ct. Cl. 705, 468 F.2d 922 (1972).
On consideration of the record and the parties’ submissions, but without oral argument, we grant defendant’s motion to dismiss. Plaintiffs petition is dismissed.

 Maryland Casualty Company, which insures the National Trust headquarters, was "noticed” as a "third party defendant” by plaintiff under Rule 41(a)(1). On December 23,1981, Maryland Casualty filed a motion to dismiss plaintiffs petition to the extent it purports to seek any relief in this court against Maryland Casualty. This court’s disposition of plaintiffs primary claim disposes also of the third party motion.

 Nor has an implied contract, also a basis for Tucker Act jurisdiction, been alleged by plaintiff.

 In those instances in which this court has held that it has contract jurisdiction under the Tucker Act we have found the contracting entity to be (1) a governmental agency and (2) capable of obligating treasury funds. See, e.g., L'Enfant Plaza Properties v. United States, supra.