# United States Court of Appeals for the Federal Circuit

---

**JOHN B. CORR** AND **JOHN W. GRIGSBY,**
*Plaintiffs-Appellants,*

v.

**METROPOLITAN WASHINGTON AIRPORTS AUTHORITY,**
*Defendant-Appellee.*

---

2011-1501

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 11-CV-0389, Judge Anthony J. Trenga.

---

ROBERT J. CYNKAR, Cuneo, Gilbert & LaDuca, LLP, of Alexandria, Virginia, argued for the plaintiffs-appellants. With him on the brief were PATRICK M. MCSWEENEY, of Powhatan, Virginia, CHRISTOPHER I. KACHOUROFF, Dominion Law Center, P.C., of Woodbridge, Virginia, and RICHARD B. ROSENTHAL, Law Offices of Richard B. Rosenthal, of Miami, Florida.

STUART A. RAPHAEL, Hunton & Williams, LLP, of McLean, Virginia, argued for defendant-appellee.

---

Before NEWMAN, DYK, and PROST, *Circuit Judges.*

PROST, *Circuit Judge.*

## ORDER

Petitioners John B. Corr and John W. Grisby filed this class action against the Metropolitan Washington Airports Authority ("MWAA") on behalf of themselves and all drivers who have used the Omer L. Hirst–Adelard L. Brault Expressway, also known as the Dulles Toll Road ("Toll Road") in Virginia since 2005. They claim that the tolls are a tax and constitute an illegal exaction in violation of the Due Process Clause of the Fifth and Fourteenth Amendments because they are assessed by MWAA, an unelected body. Petitioners also assert that the composition of MWAA violates separation of powers by intruding on the President's authority under Article II of the Constitution. Finally, Petitioners allege a violation of the Virginia Constitution's prohibition on the establishment of a government "separate from, or independent of, the government of Virginia," set forth in Article I, § 14. Because we conclude that this court lacks jurisdiction, we transfer this case to the United States Court of Appeals for the Fourth Circuit.

I

Opening in 1962, The Dulles Airport Access Highway ("Access Road") which connects Dulles Airport to Interstate 495 and Interstate 66 was built on a portion of a federally purchased Right-of-way for the exclusive purpose of providing access to and from the Dulles Airport. At the request of the Virginia Department of Highways and Transportation ("VDOT"), in 1983, the federal government granted Virginia a 99-year easement within the Right-of-way to construct, operate and maintain the Toll Road for the use of non-airport traffic. On October 1, 1984, the Toll Road opened and became a "project" within the jurisdiction of the Commonwealth Transportation Board ("CTB"). Va. Code § 33.1–268(2)(n). Beginning in

1989, Virginia enacted a series of statutes to facilitate the maintenance and expansion of the Toll Road and mass transit in the Right-of-way. In 2005, CTB raised tolls on the Toll Road, expressly reserving the entire toll increase to fund Virginia's share of the cost of extending Metrorail to Dulles.

In 1985, Virginia and the District of Columbia passed compact-legislation authorizing the establishment of the MWAA. A year later, Congress passed the Metropolitan Washington Airports Act of 1986, 49 U.S.C. § 49101 et seq. ("Airports Act"), approving the compact-legislation. MWAA is governed by a Board of Directors consisting of thirteen members: five members appointed by the Governor of Virginia, three members appointed by the Mayor of the District of Columbia, two members appointed by the Governor of Maryland, and three members appointed by the President of the United States with the advice and consent of the Senate. 49 U.S.C. § 49106(c). According to the Airports Act, MWAA is independent of the United States Government and authorized to "operate, maintain, protect, promote, and develop the Metropolitan Washington Airports as a unit and as primary airports serving the Metropolitan Washington area." *Id.* § 49104(a)(1),(2).

Beginning in December 2005, MWAA proposed that it operate the Dulles Toll Road and oversee the construction of the Metrorail project, including assuming responsibility for toll rate setting for the Dulles Toll Road and for Virginia's remaining share of financing for both Phase I and II of the Dulles Metrorail extension. On December 29, 2006, VDOT and MWAA executed a Master Transfer Agreement and Dulles Toll Road Permit and Operating Agreement. Under the Permit, MWAA was authorized to operate the Toll Road and collect toll revenues in consideration for its obligation to fund and cause to be constructed the Dulles Corridor Metrorail Project and other transportation improvements in the Dulles Corridor. On

November 1, 2008, control of the Toll Road transferred from VDOT to MWAA.

Petitioners filed their complaint in the United States District Court of the Eastern District of Virginia on April 14, 2011. On May 5, 2011, MWAA filed a motion to dismiss on the grounds that Petitioners lack both Article III and prudential standing and that Petitioners' Complaint fails to state a claim. On July 7, 2011, the district court granted MWAA's motion and dismissed the Complaint with prejudice holding that the Petitioners' claims were barred by the prudential standing doctrine. The court alternatively held that Petitioners failed to state a claim under the Due Process Clause, that the tolls do not constitute a tax, and that even if the Virginia Constitution was violated, such claims are preempted by the Supremacy Clause. This appeal followed. On July 25, 2011, MWAA filed a motion claiming that this court lacked appellate jurisdiction and requesting that the appeal be either dismissed or transferred to the United States Court of Appeals for the Fourth Circuit. On December 9, 2011, this court denied the motion and invited the parties to reiterate their arguments in their merits briefs.

## II

As a threshold matter, we must determine whether this court has jurisdiction to hear the Petitioners' appeal. In the Complaint, Petitioners allege federal question jurisdiction under 28 U.S.C. § 1331, as well as jurisdiction under the so-called Little Tucker Act, 28 U.S.C. § 1346(a)(2). On appeal, Petitioners argue that jurisdiction properly lies with this court based on their Little Tucker Act claims. In their motion to transfer and merits brief, MWAA argues that there is no Little Tucker Act jurisdiction and the case should either be dismissed or transferred to the United States Court of Appeals for the Fourth Circuit.

District courts have jurisdiction under the Little Tucker Act to hear claims "against the United States, not exceeding $10,000" and this court has jurisdiction to hear the appeals of claims brought pursuant to the Little Tucker Act.   28 U.S.C. § 1346(a)(2); 28 U.S.C. § 1295(a)(2).   Little Tucker Act jurisdiction "may be invoked whenever 'a federal instrumentality acts within its statutory authority to carry out [the government's] purposes' as long as no other specific statutory provision bars jurisdiction." *Auction Co. of Am. v. FDIC*, 132 F.3d 746, 749 (D.C. Cir. 1997), *decision clarified on denial of reh'g*, 141 F.3d 1198 (D.C. Cir. 1998) (quoting *Butz Eng'g Corp. v. United States*, 204 Ct. Cl. 561, 499 F.2d 619, 622 (Ct. Cl.1974)).   Petitioners allege that MWAA is a federal instrumentality for purposes of their constitutional claims and, therefore, jurisdiction in this court is proper under the Little Tucker Act.

We must therefore determine whether MWAA is a federal instrumentality.   "[T]here is no simple test for ascertaining whether an institution is so closely related to governmental activity as to become a [federal] instrumentality." *Dep't of Emp't v. United States*, 385 U.S. 355, 358-59 (1966).   Nonetheless, "the Supreme Court has looked to several factors, including: whether the entity was created by the government; whether it was established to pursue governmental objectives; whether government officials handle and control its operations; and whether the officers of the entity are appointed by the government." *Augustine v. Dep't of Veterans Affairs*, 429 F.3d 1334, 1339 n.3 (Fed. Cir. 2005) (citing *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 397-98 (1995)).

The first factor–whether the entity was created by the federal government–does not support the conclusion that MWAA is a federal instrumentality.   It is true that MWAA was created by Congress through passage of the Airports Act.   The Airports Act, however, represents

Congressional approval of Virginia's and the District of Columbia's compact-legislation authorizing the establishment of MWAA rather than the creation of the Authority in the first instance. Moreover, the Airports Act states that MWAA "shall be a public body corporate and politic with the powers and jurisdiction conferred upon it jointly by the legislative authority of Virginia and the District of Columbia or by either of them and concurred in by the legislative authority of the other jurisdiction." 49 U.S.C. § 49106(a). Thus, though it may partly owe its existence to an act of Congress, MWAA was in large part created by, and exercises the authority of, Virginia and the District of Columbia.

Petitioners fare little better under the second factor. Petitioners allege that MWAA was created to serve federal interests such as managing and raising funds for federally owned airports. These facts must be balanced against the fact that the Airports Act indicates that the federal government had "a continuing but limited interest" in the operation of Reagan National Airport and Dulles International Airport. *Id.* § 49101(3). That "limited" federal interest is satisfied "through a lease mechanism which provides for local control and operation." *Id.* § 49101(10). Moreover, Congress found that many groups had an interest in the airports, including: "nearby communities, the traveling public, air carriers, general aviation, airport employees, and other interested groups, as well as the interests of the United States Government and State governments." *Id.* § 49101(6). Thus, while MWAA does serve limited federal interests, it serves regional and state interests as well.

Turning to the final two factors, it becomes clear that MWAA cannot be considered a federal instrumentality for the purpose of Petitioners' claims. Petitioners do not allege any facts that would allow this court to determine that federal officials handle and control MWAA's opera-

tions. To the contrary, the gravamen of Petitioners' constitutional claims is that MWAA is an unelected entity independent of elected authorities exercising governmental power. Furthermore, the President appoints only three of MWAA's thirteen board members. The fact that a small minority of the board members are federal appointees is insufficient to establish MWAA as a federal instrumentality. *See Chas. H. Tompkins Co. v. United States*, 230 Ct. Cl. 754, 756 (1982) (finding, inter alia, three federal appointees out of thirty-five board members was insufficient to establish federal control and, in turn, federal instrumentality status); *cf. Lebron*, 513 U.S. at 399 (holding that where the government, inter alia, "retains for itself permanent authority to appoint a majority of the directors of [a] corporation, the corporation is part of the Government for purposes of the First Amendment").

As MWAA possesses few, if any, of the hallmarks of a federal instrumentality identified in *Lebron*, we conclude that MWAA is not a federal instrumentality for the purpose of Petitioners' claims. Since MWAA is not a federal instrumentality and has not been alleged to act on behalf of the government in any other capacity, this court does not have jurisdiction over Petitioners' Little Tucker Act claims. *See Slattery v. United States*, 635 F.3d 1298, 1301 (Fed. Cir. 2011) (en banc) ("The [Tucker Act's] jurisdictional criterion is . . . whether the government entity was acting on behalf of the government"). Therefore, this court lacks jurisdiction to hear Petitioners' non-Little Tucker Act claims.

III

In their Complaint, Petitioners allege federal question jurisdiction under 28 U.S.C. § 1331 and there is no dispute that this appeal could have been filed in the United States Court of Appeals for the Fourth Circuit. Thus, this court will transfer the appeal to the court in which it could have been brought, pursuant to 28 U.S.C. § 1631 (when an appeal is filed in a court which thereafter determines that it lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed").

Accordingly,

IT IS ORDERED THAT:

The motion to transfer the appeal, pursuant to 28 U.S.C. § 1631, is granted. The appeal is transferred to the United States Court of Appeals for the Fourth Circuit.

FOR THE COURT

December 12, 2012                    /s/ Sharon Prost
        Date                         Sharon Prost
                                     Circuit Judge